TOD W. FRAZER III ET AL. *v.* JOHN MCGOWAN ET AL.
(12286)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued November 13, 1985—decision released January 7, 1986

*Donald R. Beebe,* with whom were *Janis M. Webster* and, on the brief, *Frederick J. Miano,* for the appellants (plaintiffs).

*Philip V. Chabot,* for the appellee (defendant Westerly Hospital).

PETERS, C. J. The sole issue on this appeal is a determination of the circumstances under which a Connecticut court may exercise personal jurisdiction over a hospital that is located in Rhode Island. The named plaintiff, Tod W. Frazer III,[1] brought suit in Connecticut Superior Court against John McGowan, M.D., and Westerly Hospital, alleging medical malpractice and

---

[1] The named plaintiff's mother, Linda Frazer, brought this action on behalf of her son as his parent and next friend.

negligence. On June 29, 1983, after a hearing, the trial court granted the hospital's motion to dismiss for lack of personal jurisdiction.[2] The plaintiffs appeal from this judgment. We find error.

The trial court's memorandum of decision and the record reveal the following undisputed facts. In October, 1979, the named plaintiff, a twelve year old resident of Ledyard, Connecticut, began seeing McGowan in his Mystic, Connecticut office for the treatment of an allergy. During the following ten months, the plaintiff visited McGowan's office regularly. McGowan was licensed to practice medicine both in Connecticut and in Rhode Island and maintained offices in both states. He was a member of the medical staff with full admitting privileges at Westerly Hospital in Rhode Island. Westerly Hospital was the only hospital at which McGowan enjoyed admitting privileges. All of McGowan's patients who required hospitalization were sent to Westerly Hospital and Westerly Hospital accepted every patient whom McGowan wanted to have admitted. In the course of treating the named plaintiff, McGowan had him admitted to Westerly Hospital on three occasions. This cause of action arises from conduct of McGowan and the hospital staff that allegedly occurred during the named plaintiff's third visit to Westerly Hospital.

Westerly Hospital, located near the Connecticut border in Westerly, Rhode Island, is a Rhode Island nonstock corporation licensed to operate as a hospital in Rhode Island. The hospital maintains no treatment facilities in Connecticut. It is not registered to do business in this state as a foreign corporation nor is it licensed by the Connecticut department of health.

---

[2] The trial court dismissed the plaintiffs' action against Westerly Hospital only. The ruling did not affect the plaintiffs' suit against McGowan.

Nonetheless, the hospital has significant contacts with the state of Connecticut. Thirteen of the physicians with admitting privileges at the hospital had offices in Connecticut at the time of the commencement of this suit. The hospital knew that eleven of them had offices only in Connecticut. Eight of the Connecticut physicians were members of the hospital's courtesy staff and had limited admitting privileges; five, including McGowan, were members of the medical staff and had full admitting privileges. From 1978 until 1981, the hospital maintained a listing in the yellow pages of the New London, Connecticut telephone directory. During the twelve month period ending in July, 1980, 35.3 percent of the patients discharged by Westerly Hospital were residents of the state of Connecticut.

In its decision granting the hospital's motion to dismiss for lack of personal jurisdiction in Connecticut over this foreign corporation, the trial court correctly recognized that it was faced with a two-part inquiry. Its first obligation was to decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the hospital. If the statutory requirements were met, its second obligation was then to decide whether the exercise of jurisdiction over the hospital would violate constitutional principles of due process. *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 38–39, 495 A.2d 1034 (1985); *Lombard Bros., Inc.* v. *General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983); *Zartolas* v. *Nisenfeld,* 184 Conn. 471, 473–78, 440 A.2d 179 (1981). The trial court did not make the second of these inquiries because it held that the long-arm statute governing nonstock corporations, General Statutes § 33-519 (c),[3] did not reach

---

[3] General Statutes § 33-519 (c) provides: "(c) Every foreign corporation shall be subject to suit in this state by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state on any

the defendant hospital. The court addressed its attention to two subdivisions of § 33-519 (c). It concluded that jurisdiction did not lie under § 33-519 (c) (1) because there was no contract made in Connecticut between the plaintiffs and the defendant hospital. It also held that jurisdiction did not lie under § 33-519 (c) (2) because it found there was not the type of repeated solicitation required by the statute. It assigned no evidentiary value to the hospital's listing in the yellow pages of the New London telephone directory because it held that solicitation could only support jurisdiction when there was a causal connection between the solicitation and the plaintiff's cause of action. It found inconclusive the referral relationship between the admitting physicians and the defendant hospital because the physicians were not acting as agents for the hospital.

On appeal, the plaintiffs argue that the trial court erred in concluding that the defendant hospital did not fall within the jurisdictional confines of § 33-519 (c). The plaintiffs maintain that the court erred in the standard it applied in its interpretation of § 33-519 (c) and in its conclusion that the plaintiffs had demonstrated neither a contract basis nor a solicitation basis for application of the long-arm statute. These claims of error do not challenge the trial court's findings of fact, as to which there was no dispute, but rather put into issue the court's conclusions of law.

cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any solicitation in this state by mail or otherwise if the corporation has repeatedly so solicited; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or a single act and whether arising out of misfeasance or nonfeasance."

The first issue that we must consider is what the standards are that govern the interpretation of § 33-519 (c). As the parties apparently agree, this long-arm statute, which governs nonstock corporations, closely parallels General Statutes § 33-411 (c),[4] governing stock corporations. In *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 253–54, we recently held that the latter subsection "confers jurisdiction over designated causes of action without regard to whether a foreign corporation transacts business in Connecticut and without regard to a causal connection between the plaintiff's cause of action and the defendant's presence in this state. [The language of § 33-411 (c) requires] inquiry not only into the various elements of the plaintiff's cause of action, spelled out in the various subparts of subsection (c), but also into the totality of contacts which the defendant may have with the forum. The totality of a defendant's contacts may include activities which . . . do not constitute 'transacting business' in this state . . . such as ownership of property in this state and solicitation of business here . . . ." In effect we determined, relying on contrasting language in § 33-411 (b), that in enacting § 33-411 (c),

---

[4] General Statutes § 33-411 (c) provides: "(c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

which subjects foreign corporations to suit here "whether or not such foreign corporation is transacting or has transacted business in this state," the legislature intended to exercise its full constitutional power over foreign corporations in cases falling within one of the designated causes of action. "Under [§ 33-411 (c)], consistent with the constitutional demands of due process, it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here. *World-Wide Volkswagen Corporation* v. *Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); *Kulko* v. *California Superior Court,* 436 U.S. 84, 92, 97–98, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978); *Hanson* v. *Denckla,* 357 U.S. 235, 251, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958); *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 2d 95 (1945); *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 459 A.2d 503 (1983); See 1 Restatement (Second), Judgments § 5, comment b." *Lombard Bros., Inc.* v. *General Asset Management Co.,* supra, 255.

Applying the principles established in *Lombard* to this case, we conclude that the trial court was mistaken in requiring a causal connection between evidence of solicitation and the plaintiff's cause of action. The relevant language of § 33-519 (c) is identical to that of § 33-411 (c) except that, in accordance with its subject matter, the nonstock corporation long-arm statute speaks of "whether or not such foreign corporation is conducting or has conducted affairs in this state."[5] We can surmise no basis in the language of the two long-arm statutes for a distinction on this issue between stock corporations and nonstock corporations, and the par-

---

[5] The relevant language of §§ 33-519 (c) and 33-411 (c) appears in footnotes 3 and 4, supra.

ties have suggested none. If the plaintiff's cause of action alleges conduct falling within one of the four statutorily designated classes, the court must examine the totality of the defendant's contacts with the state of Connecticut to determine whether personal jurisdiction over the defendant is proper.

The trial court's application of a standard more stringent than the statute requires necessarily colored its conclusion that the plaintiffs had failed to establish a statutory nexus for in personam jurisdiction in Connecticut over the defendant hospital. We must therefore decide whether, on the undisputed facts disclosed on the record, the plaintiffs have proven their claim that § 33-519 (c) permits them to sue the defendant in this state.

We turn first to the plaintiffs' claim that solicitation by the hospital in Connecticut confers jurisdiction upon Connecticut courts. Section 33-519 (c) (2) confers such jurisdiction, "whether or not such foreign corporation is conducting or has conducted affairs in this state on any cause of action arising as follows . . . (2) out of any solicitation in this state by mail or otherwise if the corporation has repeatedly so solicited."

Application of § 33-519 (c) (2) to the facts of this case is difficult because hospitals, unlike conventional commercial enterprises, do not aggressively advertise their services. Indeed, principles of medical ethics forbid "solicitation" by doctors and hospitals. Nevertheless, hospitals do maintain institutional arrangements that serve to attract patients. A patient may enter a hospital in two ways. He can be admitted at the request of a physician who has admitting privileges at the hospital or he can be admitted after receiving treatment in the hospital emergency room. 1 Lawyers' Medical Cyclopedia (1981) § 2.12. A hospital solicits patients for the purposes of § 33-519 (c) (2) by acting in a manner

that reasonably and foreseeably is likely to enhance the flow of patients from either of these sources. See *Lemke* v. *St. Margaret Hospital,* 552 F. Sup. 833 (N.D. Ill. 1982) (hospital referrals constituted solicitation), rev'd on other grounds, 594 F. Sup. 25 (N.D. Ill. 1983); *Soares* v. *Roberts,* 417 F. Sup. 304 (D.R.I. 1976) (Massachusetts clinic solicited Rhode Island patients by receiving patients referred by Rhode Island physicians and by distributing information in Rhode Island); *S. R.* v. *Fairmont,* 280 S.E.2d 712 (W. Va. 1981); see also *Wolf* v. *Richmond County Hospital Authority,* 745 F.2d 904, 912 (4th Cir. 1984); *Cubbage* v. *Merchent,* 744 F.2d 665 (9th Cir. 1984), cert. denied, 475 U.S.     , 105 S. Ct. 1359, 84 L. Ed. 2d 380 (1985); *Braman* v. *Mary Hitchcock Memorial Hospital,* 631 F.2d 6 (2d Cir. 1980); but see *Gelineau* v. *New York University Hospital,* 375 F. Sup. 661 (D.N.J. 1974).

In this case, the record reveals that Westerly Hospital took affirmative measures designed to attract Connecticut patients. The hospital granted admitting privileges to a significant number of physicians who practiced in Connecticut. Many of these doctors, including the doctor who treated the named plaintiff, were members of the hospital's medical staff and enjoyed unlimited admitting privileges. The hospital could foresee that the presence of Connecticut doctors on the staff would result in an influx of patients from Connecticut who would not otherwise seek care at Westerly Hospital. The hospital contends that the doctors could not solicit on behalf of the hospital because they were not agents of the hospital. This argument reads the word "solicit" too narrowly. To solicit in Connecticut, a hospital need not send emissaries into the state to issue invitations to state residents. A hospital may solicit in Connecticut by setting up an organizational network that is likely to prompt a significant number of Connecticut

patients to seek treatment at that hospital. See *Cubbage* v. *Merchent,* supra; *Braman* v. *Mary Hitchcock Memorial Hospital,* supra.

The named plaintiff's cause of action in this case arose from repeated solicitation conducted by Westerly Hospital through the use of such a network. McGowan treated the named plaintiff in Connecticut and arranged for him to enter Westerly Hospital by exercising his admitting privileges there. It was during this hospitalization that the allegedly tortious conduct that forms the basis for the plaintiffs' suit occurred. The hospital was aware that the named plaintiff's doctor maintained offices in Connecticut. Indeed, it appointed him to its medical staff only after he had received his license to practice medicine in this state.[6]

Once it is determined that there is an adequate connection between the hospital's act of solicitation and the plaintiff's cause of action to satisfy the requirements of § 33-519 (c) (2), the long-arm statute authorizes the exercise of jurisdiction if such an exercise comports with the principles of due process. The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corporation* v. *Woodson,* supra, 292; *International Shoe Co.* v. *Washington,* supra; *Milliken* v. *Meyer,* 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940).

---

[6] Our holding that Westerly Hospital solicited in Connecticut for purposes of General Statutes § 33-519 (c) (2) in no way implies that the hospital's conduct of its affairs constituted a violation of the ethical standards of the medical profession.

Our review of the record in this case convinces us that Westerly Hospital's contacts with Connecticut were sufficient to satisfy the requirements of due process. The hospital purposely affiliated itself with a number of Connecticut doctors who were likely to refer Connecticut patients for admission. It solicited in this state by maintaining a listing in the yellow pages of the New London, Connecticut telephone directory for four years. See *Lemke* v. *St. Margaret Hospital,* supra; *S. R.* v. *Fairmont,* supra. Even though the hospital paid no fee for the listings, it consented to their appearance and it accepted the benefits that flowed therefrom. By allowing the listings to be placed in the directories, the hospital sent a message that was specifically directed to Connecticut residents informing them that Westerly Hospital stood ready to serve them. Cf. *Gardner* v. *Braniff International,* 312 F. Sup. 844 (D. Conn. 1970). The hospital can reasonably be held to have foreseen that the number of patients from Connecticut seeking aid in its emergency room would increase due to the listing. As a result of the totality of the hospital's connections with, and proximity to, Connecticut, 35.3 percent of the patients discharged during a twelve month period were Connecticut residents. Because the hospital is located so close to Connecticut, defending a law suit in this state imposes no undue burden on it. Indeed, just as it was natural for the hospital to avail itself of the services of physicians with offices in nearby sections of Connecticut, so it was natural for the hospital to anticipate that it might be haled into court in Connecticut to defend its medical competence in treating that portion of its market that is in Connecticut. The fact that the defendant hospital itself maintained no physical presence in Connecticut does not mean that it did not purposefully direct its activities toward residents of this state. *Burger King Corporation* v. *Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Calder* v. *Jones,* 465 U.S. 783,

788–89, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); *Keeton* v. *Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). In light of the totality of the circumstances, we conclude that the exercise of jurisdiction over the hospital by Connecticut courts is neither unfair nor unjust. The trial court therefore erred in granting the hospital's motion to dismiss.[7] See *World-Wide Volkswagen Corporation* v. *Woodson,* supra, 297; *Kulko* v. *California Superior Court,* supra, 97–98; *Hanson* v. *Denkla,* supra, 253; *International Shoe Co.* v. *Washington,* supra; *Lombard Bros., Inc.* v. *General Asset Management Co.,* supra, 254–55.

Because we hold that personal jurisdiction over the hospital arises out of the hospital's repeated solicitation in this state, we need not consider the plaintiffs' alternative claim that contracts allegedly made by the hospital in Connecticut create a statutory nexus for the exercise of jurisdiction over the hospital.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[7] While we hold that Connecticut courts may assert personal jurisdiction over Westerly Hospital, we express no opinion on whether, as a matter of conflict of laws, the substantive law of Connecticut or Rhode Island should govern the merits of this case.