[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE MOTION OF THE DEFENDANT, OCEAN PROPERTIES BAHAMAS, LTD., TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION
The plaintiffs, Richard J. DeLuca, and his wife, Sheila C. DeLuca, who live in Colchester, Connecticut, have brought this negligence action against the defendants, Holiday Inns, Inc. (Holiday Inns), a Tennessee corporation authorized to do business in Connecticut, and Ocean Properties Bahamas, Ltd. (Ocean Properties), a Bahamian corporation, in which the DeLucas seek to recover damages for personal injuries sustained by Mr. DeLuca on May 1, 1989, while they were vacationing in the Bahamas at the Pirate's Cove Holiday Inn on Paradise Island in Nassau.
The complaint alleges (3) that Holiday Inns operated "hotels and/or motels under direct ownership or franchise/license agreements worldwide and as such engaged in national advertising, promoting its national and international system without distinguishing between company-owned or franchised/licensed properties." It also alleges (7) that Ocean Properties operated the Holiday Inn hotel on Paradise Island under a license agreement between the defendants which provided that the licensor, Holiday Inns, was to be responsible for "national and international advertising, including advertising within the State of Connecticut, related to the Holiday Inn hotel and facilities CT Page 10437 in Paradise Island . . . and, as such, held itself out to the plaintiffs and the general public as the party which owned, possessed, controlled and/or maintained" the hotel and its facilities.
The complaint states (9) that the plaintiffs, "in reliance on the aforesaid advertising", made reservations through a Connecticut travel agency to vacation at the Paradise Island Holiday Inn in Nassau, and that on May 1, 1989, while they were guests at the hotel, the plaintiff husband went swimming in a lagoon on the premises of the hotel when "his head struck an underwater sandy obstruction which was hidden from view (11) resulting in damage to his spinal cord and immediate quadriplegia, leaving him permanently paralyzed . . .". (13). Paragraph 12 alleges that Mr. DeLuca's injuries were caused by the negligence of the defendants in that they failed to warn him of a "dangerous and defective condition", they failed to remedy it, they failed to provide supervision or safety warnings, and they failed to take steps to protect hotel guests against the dangers of the beach and lagoon areas.
The defendant, Ocean Properties, has moved to dismiss the action against it for lack of personal jurisdiction because the long-arm statute, 33-411 of the General Statutes, does not subject it to jurisdiction in the state of Connecticut, and even if the statutory jurisdictional requirements were met, the exercise of jurisdiction by this court "would offend traditional notions of due process as the defendant has no minimum contacts with the State of Connecticut." Ocean Properties has filed an affidavit in support of its motion by Mark Walsh, its vice-president, which states that it is incorporated only under the laws of the Bahamas, that it conducts its business there exclusively, that it "does not and has never conducted any business" in Connecticut, that it "does not advertise and has never advertised or otherwise solicited business in [this state]", and that it "has no connection or contact of any type with the State of Connecticut."
The plaintiffs have attached to their brief in opposition to the defendant's motion by way of an evidentiary submission, various documents, including fifteen Hartford Courant Sunday travel section advertisements published during the period from September 11, 1988 through August 20, 1989, which list Ocean Properties' hotel as "Pirate's Cove Holiday Inn" on Paradise Island, a "License Agreement" dated October 28, 1987, between CT Page 10438 Holiday Inns and Ocean Properties (Exhibit B), excerpts of the deposition testimony of Mark T. Walsh, a corporate vice-president of the defendant (Exhibit C), as well as a "Pirate's Cove Holiday Inn" letterhead furnished by Ocean Properties for use by the guests of its hotel (Exhibit D). They have also submitted an affidavit (Exhibit E) of Michael Walsh, a vice-president of Ocean Properties, filed in support of a motion for summary judgment by Holiday Inns in the case of Rosen v. Holiday Inns. Inc., Civil No. H-89-43 in the United States District Court of Connecticut, which states that under the license agreement Ocean Properties "had the sole right of possession and control over the hotel and its premises", as well as Judge Dorsey's ruling in that case denying the motion on the ground that whether Holiday Inns could be held liable as principal on a theory of apparent authority was a question of fact for the jury.
The "License Agreement" dated October 28, 1987 (Plaintiff's Exhibit B, hereafter Ex. B) between Holiday Inns, Inc., as licensor, and Ocean Properties Bahamas, Ltd. (described as a Bahamian corporation whose corporate address was given as 8132 W. Glades Road, Boca Raton, Florida), as licensee, was also referred to as a franchise agreement by Mark T. Walsh in his deposition (Plaintiff's Exhibit C, pp. 57-58, hereafter Ex. C). The subject of the agreement is referred to as the "System", which is owned, operated and licensed by Holiday Inns and is "designed to provide a distinctive, high quality hotel service to the public" under the "Holiday Inn" name. Ex. B, 1.
The "System" includes (3) "a computerized reservation network operated under the name "Holidex" [as well as] advertising, publicity and other marketing programs and materials. . .". Paragraph 6 of the agreement provides for a monthly payment by the licensee of 1% of its gross rooms revenue as a "Marketing Contribution" which "will be used by Licensor for costs associated with national and international advertising, promotion, publicity, market research and other marketing programs and related activities." 8.
Local and regional marketing programs and related activities can be conducted by the licensee only at its own expense and are "subject to Licensor's restrictions as to form and content (which may require prior approval)." Id. Paragraph 16 states that the licensee is an independent contractor and that neither party is the legal representative or agent of the other "for any purpose whatsoever" and that the licensee "will take such steps as CT Page 10439 Licensor may from time to time reasonably request to minimize the [chance] of a claim being made against Licensor for anything that occurs at the Hotel", including notice in guestrooms, public rooms and advertisements . . . making clear to the public that Licensor is not the owner or operator of the Hotel and is not accountable for what happens [there]."
In the course of his deposition testimony, Mark T. Walsh stated (Ex. C, p. 58) that Ocean Properties entered into the agreement because Holiday Inns has an established name in the hotel industry which attracts people to its hotel. He also explained (p. 61) that the Holidex reservation system operates independently of the individual hotel owner or operator and that an employee of Holiday Inns could bind Ocean Properties to whatever reservations are made through Holidex.
Walsh also described (pages 72-92) Ocean Properties' relationship with so-called "wholesalers" described by him as "somebody that sells rooms", whereby they are given an allotment of rooms by the hotel which they then package and try to sell to customers. He was unable to say whether any of the wholesalers that the hotel had dealings with were in Connecticut or whether any of them might have advertised packages for ocean Properties' hotel because, as he explained, wholesalers do all the advertising and his hotel does not dictate or have any control over how or where they do their advertising.
Walsh also stated in his deposition that literature in the form of brochures or other materials are provided by the hotel to wholesalers which they presumably show or give to their customers. With respect to the advertisements in the Hartford Courant that were submitted by the plaintiffs, he could not say whether they were placed by any of the fifteen or twenty wholesalers with whom he has had direct dealings.
He stated that he was not sure whether a wholesaler would place an ad such as those in the Hartford Courant listing Pirate's Cove Holiday Inn if they did not have a relationship with his hotel. He also stated that he had never seen an ad listing his hotel which suggested that it was owned and operated by Ocean Properties rather than by Holiday Inns.
In response to questions about the marketing contribution paid to Holiday Inns under the licensing agreement, Walsh stated that based on the gross revenue from room sales for the prior CT Page 10440 year of 12 million dollars, Ocean Properties' contribution would have been $120,000 or 1% of that amount. He said that he did not know what the money was actually used for, but that the purpose was to promote the Holiday Inn system as a whole by means of advertising, and as a result benefits accrued to all the hotels in the system including his own.
On the date scheduled for oral argument on the motion to dismiss, an evidentiary hearing was held at the request of counsel for the plaintiffs to allow them to present evidence on issues of fact that might be necessary to determine the court's jurisdiction. See Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 56. Both Richard DeLuca and Sheila DeLuca testified as to the factual circumstances that led up to their decision to spend their vacation at the Pirate's Cove Holiday Inn.
Richard DeLuca testified (Transcript, p. 14 et seq., hereafter Tr.) that in November of 1988 he started looking through the travel section of the Hartford Courant and decided that the Bahamas "looked like a real good place to go" because he saw a Holiday Inn that was located there listed in the newspaper advertisements. His decision to stay at a Holiday Inn was made because he had been to other Holiday Inns "and they've been safe, and real reliable [and] it was an American hotel." Id. p. 15.
He identified the ads referred to in his testimony as those published on September 11, 1988, September 18, 1988, November 20, 1988 and December 4, 1988, and they were then marked as exhibits and admitted in evidence. The first two were sponsored by "Liberty Travel" and listed seven hotels on Paradise Island, only one of which, identified as "Pirate's Cove Holiday Inn", was a Holiday Inn, and the other two, which named "Paradise Island Express" as the advertiser, listed nine Paradise Island hotels, one of which was "Pirate's Cove Holiday Inn", the only such facility listed at that location.
He also testified that after they had made their decision to stay at a Holiday Inn in the Bahamas, they went to a travel agency in January of 1989 and got brochures and other information about that particular hotel. He stated that at least at that time it would not have made any difference to him that the Holiday Inn he had selected was owned and operated by a franchise rather than directly by Holiday Inns. CT Page 10441
Sheila DeLuca testified that she also shared her husband's preference for Holiday Inns because she used to stay at one as a child and her father patronized Holiday Inns "all through his career as a traveling salesman." Tr. 28. On cross-examination, she identified a Holiday Inn brochure that she had received from the travel agency, (apparently printed in 1983), specifically describing the Holiday Inn at Paradise Island, and she also testified that during their stay at the hotel they never had any knowledge that any entity other than Holiday Inns owned, controlled or operated it.
At the conclusion of the hearing, the defendant submitted an affidavit by Michael P. Walsh, a vice-president of Ocean Properties, stating that "Pan Am Holidays" and "Travel Impressions" were two of a number of travel or tour wholesalers that have booked rooms at the hotel. Walsh stated that such wholesalers are given allotments at a fixed price subject to certain conditions which, in effect, give them a "right of first refusal", that none of Ocean Properties' wholesalers have ever been authorized to act as their agents, and that they operate at all times as independent companies who put together complete, inclusive packages "which they alone arrange to price, advertise and market."
The court's first inquiry where its jurisdiction over a foreign corporation is challenged is whether our long-arm statute authorizes the exercise of jurisdiction under the facts of each particular case. Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 250. It is only if the court finds that the statute is applicable that it reaches "the question of whether it would offend due process to assert jurisdiction." Id.
The relevant portion of the long-arm statute upon which the plaintiffs rely is 33-411(c) of the General Statutes which reads as follows:
 (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or CT Page 10442 offers relating thereto were accepted within or without the state.
Where, as in this case, a motion to dismiss for lack of jurisdiction raises factual questions which cannot be determined from the face of the record, the burden of proof is on the plaintiffs to present evidence which will establish jurisdiction. Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 54.
Section 33-411(c) provides a more lenient standard than the traditional "transacting business" category of 33-411(b) because it extends jurisdiction to a foreign corporation "whether or not [it] is transacting or has transacted business in this state" if the corporation is a defendant in a cause of action "arising out of" any of the activities enumerated in the four subsections of section (c). McFaddin v. National Executive Search, Inc.,354 F. Sup. 1166, 1168 (D. Conn. 1973). Where the defendant corporation itself directly places "six franchise ads over a six-month period in a newspaper whose circulation clearly includes Connecticut [its advertising] demonstrates a sufficiently repetitious pattern to satisfy subsection (c)(2)." Id. at 1169.
Ocean Properties contends that travel agencies and tour wholesalers had no authority to solicit on its behalf by placing ads in the Hartford Courant and were therefore not acting as its agents. Our Supreme Court has held that such an argument construes the word "solicit" too narrowly because for "business [to be] solicited in this state" within the meaning of the statute, a non-resident corporation "need not send emissaries into the state to issue invitations to state residents." Frazer v. McGowan, 198 Conn. 243, 251.
In Frazer, the court held that a foreign corporation "may solicit in Connecticut by setting up an organizational network" that is likely to prompt a significant number of Connecticut residents to utilize the services that it offers. Id., 252. (emphasis added). Where the allegedly tortious conduct that forms the basis for the plaintiff's suit occurred during the time that such services were being provided as the result of the "repeated solicitation conducted by the [defendant] through the use of such a network", the cause of action will be deemed to be one "arising out of" such solicitation within the meaning of the statute, thereby satisfying the requirement that there be "an adequate connection between the defendant's act of solicitation and the plaintiff's cause of action. . .". Id. CT Page 10443
The "organizational network" referred to in Frazer consisted of a "significant number of physicians who practiced in Connecticut" who had admitting privileges in the defendant Rhode Island hospital and whose Connecticut patients were treated at the hospital after being referred by their physicians. Id. 251. The hospital's claim and the trial court's finding "that the doctors could not solicit on behalf of the hospital because they were not agents of the hospital" were rejected by the court in Frazer because it recognized that hospitals "maintain institutional arrangements that serve to attract patients" and that a hospital "solicits" patients for the purposes of [the statute] by acting in a manner that reasonably and foreseeably is likely to enhance the flow of patients. . .". Id., 251.
The comparable "institutional arrangement" in the hotel context is the mutually beneficial relationship that hotels have with travel agencies and tour wholesalers whose advertising of vacation packages helps generate business for the benefit of both hotel and wholesaler. Reservation systems such as "Holidex", described in the license agreement as a "computerized reservation network", which permit national hotel chains such as Holiday Inns to accept and confirm reservations for any of its member hotels, may be described as an "organizational network" available to travel agencies and tour wholesalers as a device which together with their advertising and that of Holiday Inns itself, gives a nonresident hotel corporation the benefits of direct solicitation without the corresponding burden of having to submit to the jurisdiction of the forum state.
Where an international hotel operates a reservation service for its member hotels which both accepts and confirms room reservations for a member hotel outside the forum state, it "does all the business which [the foreign hotel corporation] could do were it here by its own officials." Frummer v. Hilton Hotels International, Inc., 227 N.E.2d 851 (N.Y. 1967). Although "litigation in a foreign jurisdiction is a burdensome inconvenience . . . it is part of the price" which must be paid by those who engage in international business activity from which "they receive considerable benefits . . . and may not be heard to complain about the burdens." Id., 854.
Subsequent to the filing by the parties of their briefs in support of and in opposition to the defendant's motion, Judge Alan H. Nevas of the United States District Court of Connecticut CT Page 10444 denied a motion by a Holiday Inn franchisee, Posadas De Mexico, to dismiss a diversity action brought by a plaintiff who sustained personal injuries while staying at the defendant's hotel located in Ixtapa, Mexico. Dauplaise v. Holiday Inns, Inc., No. 2:91 CV 00093, slip op. (D. Conn. Oct. 8, 1992). The facts of the case as alleged in the pleadings are indistinguishable from the pleadings and the evidentiary submissions in this case, with the possible exception of the fact that the plaintiff's reading of a brochure at the travel agency rather than the travel ads in the Hartford Courant "was pivotal in her decision to vacation at the Ixtapa Holiday Inn." Id. slip. op. at 7.
The court noted in an earlier ruling (slip. op., Feb. 20, 1992 at 2) that Holiday Inns "engaged in a national advertising effort to promote both franchise and company owned resort hotels [which included] advertisements promoting various vacation plans at Holiday Inns . . . which were placed in Connecticut newspapers and with Connecticut travel agencies [and that the plaintiff], familiar with the Holiday Inn name and in reliance on the Holiday Inns' advertisements, made reservations through a Connecticut travel agency" to vacation at the franchisee's Holiday Inn. Id. The court, citing Whelen Engineering v. Tomar Electronics,672 F. Sup. 659, 663 (D. Conn. 1987), stated that although the sales campaign was not specifically targeted to Connecticut and was not conducted by Posadas, "[i]t cannot be said that the defendant here was unaware that buyers for its products were being solicited in Connecticut." Whelen, at 63.
Judge Nevas concluded that the solicitation of business in Connecticut "through the in-state travel agency promotions and brochure circulation . . . is sufficient to satisfy the solicitation requirement of the Connecticut long-arm statute as it applies to the defendant Posadas in this case." Dauplaise, slip. op. 9. This court also concludes that under the virtually identical facts and circumstances of this case, Ocean Properties "repeatedly solicited" business in this state within the meaning of 33-411 (c) of the General Statutes, and that our long-arm statute authorizes the exercise of jurisdiction "if such an exercise comports with the principles of due process." Frazer, at 252.
Subsection (c) of the long-arm statute confers jurisdiction over the designated causes of action not only without regard to whether a foreign corporation transacts business in this state CT Page 10445 but also without regard to "a causal connection between evidence of solicitation and the plaintiff's cause of action." Frazer, 249. The court must, therefore, in order to satisfy the constitutional demands of due process, consider, on a case by case basis, "the totality of the defendant's conduct and connection with this state . . . to determine whether the defendant could reasonably have anticipated being haled into court here." Lombard Bros. Inc. v. General Asset Management Co.,190 Conn. 245, 255.
"The United States Constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state." Frazer, 252. The defendant's contacts with the forum state must be such that requiring the defendant to defend in the forum state does not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286,292 (1980).
Ocean Properties' contacts with this state include its "purposeful" decision to operate its hotel as a licensee of Holiday Inns so as to attract potential customers like the plaintiffs who prefer Holiday Inns' facilities, its annual payment of 1% of its gross room sales or $120,000 as its marketing contribution to Holiday Inns' national advertising and marketing programs which are targeted in part to Connecticut residents, the financial benefits that accrue to the defendant from wholesaler and/or Holiday Inns advertisements in Connecticut informing state residents that its hotel was ready to accommodate them, its distribution of the hotel's brochures to travel agencies and tour wholesalers to promote and market the hotel in Connecticut, and the availability in Connecticut of the Holidex computerized network to wholesalers for the acceptance and confirmation of room reservations for their Connecticut clients.
It should also be noted that under the license agreement Ocean Properties had a contractual obligation (Ex. B. 16) to inform its guests that the licensee and not Holiday Inns was the true owner and therefore the party against whom all claims should be made, so that the defendant could reasonably have anticipated being haled into a Connecticut court by a Connecticut resident who sustained injuries as a result of the alleged negligence of Ocean Properties.
The fact that Ocean Properties maintained no physical CT Page 10446 presence in Connecticut does not mean that it did not purposefully direct its activities toward residents of this state. Frazer, 253. In view of the totality of the circumstances, the exercise of jurisdiction over Ocean Properties, the owner of Pirate's Cove Holiday Inn, by Connecticut courts is neither unjust, unreasonable or unfair.
The court should also note that in reaching its conclusion on the due process minimum contacts question it has relied in part on the decisions in Shute v. Carnival Cruise Lines, 783 P.2d 78
(Wash. 1989) and the Ninth Circuit case of Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir. 1990). Both courts in their opinions also adopted the "but for" rule (which was at least implicitly adopted by our Supreme Court in Frazer) stating that the plaintiff in those cases would not have been injured on the defendant's cruise ship but for carnival's solicitation of business in the state of Washington, and that "[i]t was Carnival's forum-related activities that put the parties within `tortious striking distance' of one another." Id.
The court should note at this point that the defendant, Holiday Inns, has filed a motion to dismiss on the ground of forum non conveniens in which Ocean Properties did not join because it was awaiting the court's ruling on the issues raised in its motion to dismiss for lack of personal jurisdiction which is the subject matter of this opinion. Accordingly, the court will defer its ruling on the motion of Holiday Inns in order to afford all parties an opportunity to brief (and argue, if necessary) the issue of forum non conveniens in the light of the court's finding herein that personal jurisdiction exists over Ocean Properties, and with particular reference to Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339 (8th Cir. 1983), a case involving a Holiday Inn and its foreign franchisee which appears robe directly on point.
For the foregoing reasons, the motion of Ocean Properties to dismiss for lack of personal jurisdiction is denied.
Hammer, J. CT Page 10447