[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
STATEMENT OF THE CASE
The plaintiff, James R. Worms, filed a six-count complaint against the defendants WGB Partners, L.L.C., Charles A. Bray and Joseph G. Gillespie III on December 1, 1995, alleging breach CT Page 5433-LL of contract, unjust enrichment, conversion, fraudulent inducement, and unfair trade practices arising from an agreement to form and operate a partnership and limited liability company. The defendants Charles Bray and Joseph Gillespie filed a motion to dismiss for lack of personal jurisdiction on January 22, 1996. The plaintiff filed an objection to the defendants' motion on March 12, 1996. The defendants filed a reply memorandum on May 2, 1996.
Bray and Gillespie filed affidavits to support their motion to dismiss. The defendants state that in the fall of 1994, plaintiff solicited them to form an entity to provide investment banking services to the hotel and real estate industry. The three formed WGB Partners, L.L.C., a limited liability company, under the laws of Georgia to provide these banking services. Between January and May of 1995, the three negotiated by phone and correspondence regarding the company's operating agreement, but the members could not agree and the partnership was terminated in May 1995.
In their affidavits, both defendants assert that they neither reside in Connecticut nor own or lease property in the state. Defendant Gillespie states that he has never been to Connecticut; and defendant Bray asserts that he has only been to Connecticut "on one occasion in my lifetime." Defendants explain in their supporting memorandum that on this one occasion, Bray only had a general informational meeting which did not lead to the transaction of any business. (Defendants' Memorandum of Law In Support of Motion to Dismiss For Lack of Personal Jurisdiction, p. 3), but Bray does not make this assertion in his affidavit. Both defendants also state that they "have not transacted any business in the state." They maintain that their dealings with plaintiff only involved negotiations by correspondence and telephone between Connecticut and Atlanta about the partnership operating agreement.
Plaintiff's affidavit in opposition to the motion to dismiss paints a starkly different picture than defendants' description of the parties' business dealings and asserts specific factual allegations which defendants have chosen not to contest with sworn statements of their own.
In his affidavit, plaintiff Worms states that the parties' negotiations actually resulted in the formation of a general partnership, WGB Partners. In March, 1995, this general partnership was changed to the limited liability company, named CT Page 5433-MM "WGB Partners, L.L.C." The partnership or joint venture relationship between plaintiff and defendants is evidenced, among other things, by a January, 1995 letter to plaintiff from Bray; the ordering of business cards for "WGB Partners, L.L.C."; the lease of office space for the partnership at Greenwich Plaza, Suite 100, Greenwich, Connecticut; and the opening of a checking account at the Greenwich, Connecticut branch of Citibank in the name of "WGB Partners", with plaintiff and defendant Bray as signatories. Ten thousand dollars was deposited in the partnership account at Citibank when the account was opened. In February 1995, Bray came to Connecticut, and he and plaintiff leased the office space in Greenwich, Connecticut for the business. The business also maintained an office in Atlanta, Georgia.
Plaintiff's affidavit further states that on March 3, 1995, Bray came to Connecticut again to conduct partnership business. Plaintiff and Bray met with prospective lenders and investors in Connecticut, New York and New Jersey. These efforts resulted in a contract benefitting [benefiting] the partnership. Plaintiff states that he received a contract to perform investment banking services for Boykin Management Co., a Cleveland, Ohio hotel company, and through this contract WGB Partners, L.L.C. received a $600,000 fee for arranging a financing transaction between Boykin and Lehman Brothers of New York City. Plaintiff alleges that he never received his share of this fee.
Additionally, plaintiff claims that on behalf of WGB, Partners, L.L.C., he negotiated from the company's Greenwich offices an option to purchase the Hotel Majestic in St. Louis, Missouri. This agreement was consummated and WGB Partners, L.L.C., paid $25,000 to receive this purchase option. The defendants, Bray and Gillespie, paid $8,334.00 as their share of this $25,000 purchase price. Plaintiff further alleges that he and the defendants worked together on numerous other transactions, which plaintiff believes may have generated profits exceeding $820,000. Plaintiff claims that he has not received his share of any fees generated by the parties' activities in these business ventures.
DISCUSSION
Lack of personal jurisdiction is properly raised by a motion to dismiss. Chrysler Credit Corp. v. FairfieldChrysler-Plymouth, Inc., 180 Conn. 223, 226, 429 A.2d 478
(1980). When jurisdiction is asserted on the basis of the long CT Page 5433-NN arm statutes, and the defendant challenges jurisdiction by a motion to dismiss, the burden of proof is on the plaintiff to present evidence that will establish jurisdiction and the court may consider facts outside the pleadings to resolve the motion.Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 52-53,459 A.2d 503 (1983). The court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. Antinerella v. Rioux, 229 Conn. 479, 489,642 A.2d 699 (1994). A motion to dismiss will be denied where a plaintiff is able to make a prima facie showing that defendant's conduct was sufficient for a court to exercise personal jurisdiction. In re Connecticut Asbestos Litigation, 677 F. Sup. 70,72 (D.Conn. 1986).
Defendants argue that there is no basis for personal jurisdiction under Connecticut General Statutes § 52-59b(a)(1) because defendants did not transact business in Connecticut within the terms or meaning of the statute.[1] Transacting business within the meaning of § 52-59b may include a "single purposeful business transaction" and is to be determined by balancing "public policy, common sense, and the chronology and geography of the relevant factors." Zartolas v. Nisenfeld,184 Conn. 471, 474-77, 440 A.2d 179 (1981).
There can be no question that defendants transacted business in Connecticut. Their arguments to the contrary are clearly without merit. Both Bray and Gillespie took conscious and deliberate actions to form a joint business venture with plaintiff which operated from Greenwich, Connecticut. This business venture took actions in Connecticut to lease office space, purchase business cards, and open a bank account. The defendants supplied money to finance the business' endeavors, and they allegedly profited from the business' activities. None of the cases relied on by defendants involve the extensive business contacts and activities within the State that are involved in this case. See Greene v. Sha-na-na, 637 F. Sup. 591
(D.Conn. 1986); Harris v. Wells, 832 F. Sup. 31 (D.Conn. 1993).
Defendants also make the frivolous argument that jurisdiction cannot be asserted over them because plaintiff's allegations only indicate that defendants' business activities in Connecticut were performed by them as members of the Georgia limited liability corporation, WGB Partners, L.L.C., and that the allegations do not implicate actions committed by them in their individual capacities. Stated differently, defendants contend that one CT Page 5433-OO participant of a limited liability company cannot sue another participant for the latter's breach of their agreement to operate the business — he can only sue the company itself. There is absolutely no authority for such an unusual proposition. According to the allegations in this case, plaintiff is suing the defendants as individuals regarding agreements that defendants personally breached and torts that they personally committed. He is not suing as a third-party to recover on an agreement entered into between himself and a company through its agents. Therefore, cases relied on by the defendants holding that a court should not breach the corporate shield and assert in personam jurisdiction over officers of a corporation for acts committed by the corporation within the forum state are inapposite. See Hagar v.Zaidman, 797 F. Sup. 132 (D.Conn. 1992); Mozes on Behalf ofGeneral Electric Co. v. Welch, 638 F. Sup. 215 (D.Conn. 1986).[2]
Lastly, the court must determine whether the exercise of jurisdiction violates constitutional principles of due process, as embodied in the due process clause of the Fourteenth Amendment to the United States Constitution. Frazer v. McGowan, 198 Conn. 243,246, 502 A.2d 905 (1986). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart,197 Conn. 34, 41 495 A.2d 1034 (1985). The issue is whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]." Hanson v. Denckla,357 U.S. 235, 253 (1958), and whether it is foreseeable that it could be hailed into court in Connecticut.
The defendants engaged in a joint business venture with a Connecticut resident. They opened an office and a bank account for the business in Connecticut. One of the defendants actually visited Connecticut to conduct business in the state. According to plaintiff, the business operated from its Connecticut office and received income from this operation. On the basis of these allegations, this court's exercise of personal jurisdiction over the defendants does not violate the due process clause because the defendants clearly could have foreseen that their activities could require them to appear in Connecticut court.
CONCLUSION
Therefore, for all the foregoing reasons, defendants' Motion to Dismiss is denied.
STEVENS, JUDGE CT Page 5433-PP