[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (No. 101)
Law students may doubt it, but some real-life cases really do read like law school hypotheticals. This is such a case. Here it is:
Anthony Delvecchio, a Connecticut resident, goes to Florida on vacation. While in Florida, he goes to a Target store to shop. Target is the name of a well-known national chain of stores. There are no Target stores in Connecticut, but the chain has stores in numerous other states and advertises nationally. Delvecchio has heard about Target stores in Connecticut through advertising, although he can't remember exactly what advertising. He goes to the Target store in Florida because it is a familiar name. While in the store, he slips on an allegedly wet floor and suffers injuries.
Delvecchio returns home to Connecticut and sues Target's parent corporation, Dayton Hudson Corp., for negligence in the Connecticut Superior Court. Dayton does not do business in Connecticut (unless you count advertising), but it is licensed to do business with the Secretary of State. Dayton is served pursuant to Connecticut's long-arm statute, Conn. Gen. Stat. CT Page 2442 § 33-929. Subsection (f) of that statute provides that:
 Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
Dayton files a timely motion to dismiss for lack of personal jurisdiction. Should the motion be granted? For the reasons set forth below, I conclude that the answer to this question is yes.
Supreme Court precedent requires that this question be addressed with a two-step analysis:
 When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first "decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process."
Knipple v. Viking Communications, Ltd., 236 Conn. 602, 606,674 A.2d 426 (1996). (Citation and footnote omitted.)
Given this requirement, the long-arm statute must first be addressed. Both parties agree that the applicable long-arm statute is Conn. Gen. Stat. § 33-929(f), quoted above. But the CT Page 2443 focus of the Court's initial inquiry can be narrowed even further. Three of the four jurisdictional bases identified by subsection (f) are plainly inapplicable here. This case does not involve a contract; the production, manufacture or distribution of goods; or tortious conduct in this state. Subdivisions (1), (3), and (4), setting forth those jurisdictional bases, thus have no bearing on the case. The case turns on subdivision (2). Specifically, the Court must address whether this is a "cause of action arising . . . out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers thereto were accepted within or without the state."
The phrase "arising out of" is the brass ring that both parties seek to grasp. A linguistic argument can plainly be constructed to support Delvecchio's position. Target's advertising solicited business in Connecticut. Delvecchio went to the Target store in Florida because Target was a familiar name — a familiarity created, no doubt intentionally, by Target's nationwide advertising. Therefore, Delvecchio argues, his slip on Target's Florida floor "arose out of" Target's solicitation of business in Connecticut.
Delvecchio's construction of the phrase "arising out of" casts an extremely wide net. In this sense, almost any occurrence can be said to "arise out of" some event that preceded it, going back to Columbus's discovery of America. But this is not the construction that our courts have given it. The seminal case on this point is Thomason v. Chemical Bank, 234 Conn. 281,661 A.2d 595 (1995). Thomason explains that Conn. Gen. Stat. §33-929(f)(2) does not "authorize Connecticut courts to exercise the full measure of "general' jurisdiction that would have been constitutionally permissible." Id. at 293. It construes the provision in question as follows:
 [A] plaintiffs "cause of action aris[es] . . . out of . . . business solicited in this state" if, at the time the defendant engages in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs.
Id. at 296. Thomason further explains that proof that the particular plaintiff's business was solicited in Connecticut is CT Page 2444 unimportant. The question is whether the "plaintiff's cause of action is similar to a cause of action that could have been brought here by a person whose business the defendant did solicit." Id. at 297.
Thomason lends considerable assistance to the analysis here. One potential red herring can be eliminated at once. The fact, mentioned above, that Delvecchio is unsure just what Target advertisements he has seen is irrelevant. Target advertises nationally, and just about every Connecticut resident of adult age and shopping inclination has at least heard of it. Target has a web site, ‹http://www.target.com › readily accessible by Connecticut residents. Minnesota Timberwolves basketball games, some of which are televised in Connecticut, are played in the Target Center in Minneapolis, and this fact is periodically announced during the broadcast of those games. A few years ago, the University of Connecticut women's basketball team won a much acclaimed national championship in the Target Center. Target, we may safely assume, has spent a great deal of money on building brand name recognition, and reaps appropriate rewards for that effort.
So, as Thomason explains, the question is not whether Delvecchio himself was solicited or whether his particular lawsuit was foreseeable. The question is whether it was reasonably foreseeable, as a result of Target's solicitations, that Target could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by Delvecchio.
Case law provides some helpful guideposts in answering this question. Thomason involved Chemical Bank, a New York bank which had heavily solicited business in Connecticut. Chemical Bank advertised itself as "number one for individuals and small and medium-sized businesses in . . . Connecticut." 234 Conn. at 281. It could hardly have surprised Chemical Bank, given these advertisements, that Connecticut residents would specifically seek it out. The breach of fiduciary duty action that the plaintiff brought against it was an eminently foreseeable consequence of such solicitation.
Thomason relies on Frazer v. McGowan, 198 Conn. 243,502 A.2d 905 (1986), which has an analogous fact pattern. Frazer was a medical malpractice action brought against Westerly Hospital in Westerly, Rhode Island. The hospital, located on the CT Page 2445 Connecticut-Rhode Island border, had maintained a yellow pages listing in the Rhode Island telephone directory. Id. at 246. It also granted admitting privileges to a significant number of Connecticut physicians. Id. at 251. These were "affirmative measures designed to attract Connecticut patients." Id. AccordThomason, supra, 234 Conn. at 298.
Two recently published cases decided by the United States District Court for the District of Connecticut present fact patterns analogous to those of Thomason and Frazer. O'Brien v.Okemo Mountain, Inc., 17 F. Sup.2d 98 (D.Conn. 1998) (Hall, J.), involved a well-known Vermont ski resort that heavily advertised in order to invite Connecticut residents to its slopes. The plaintiff, a Connecticut resident, was held entitled to bring a negligence action against Okemo in Connecticut for injuries he had sustained in Vermont. Similarly, Mallon v. Walt Disney WorldCo., 42 F. Sup.2d 143 (D.Conn. 1998) (Chatigney, J.), involved Walt Disney World in Florida — the destination resort of all destination resorts — which had solicited in the Connecticut media to invite Connecticut residents to its Florida location. The plaintiff was allowed to sue in Connecticut for a fall-down injury suffered in Florida.
O'Brien and Mallon, like Thomason and Frazer, show that it is not categorically impermissible to bring a negligence action in Connecticut against a nonresident defendant for an injury suffered in another state. Mallon, as it happens, involves the specific fact pattern of a fall-down injury suffered in Florida. But all of these cases differ from the present case in a significant respect. In each of those cases, the defendant — Chemical Bank, Westerly Hospital, Okemo Mountain, Disney World — specifically enticed Connecticut residents to travel out of state to do business with it or visit it. Many Connecticut residents, for example, travel to Florida for the specific purpose of visiting Disney World. Disney World encourages this with its advertising and can hardly be surprised when a Connecticut resident, so solicited, falls down and sues in the Connecticut courts. The same can be said of Chemical Bank, Westerly Hospital, and Okemo Mountain.
Target is different. It may be a nationally known chain, but it is unlikely that anyone will travel from Connecticut to Florida for the specific purpose of visiting a Target store. Delvecchio, to his credit, does not claim differently. He visited the Florida Target while on vacation, but Target was not the attraction that CT Page 2446 brought him to Florida. Although, as mentioned, Delvecchio's personal circumstances are irrelevant, he is almost certainly representative of the class of Connecticut residents who visit Target stores in Florida. Target is not a destination location. Its out-of-state visitors have travelled out-of-state for reasons having nothing to do with Target.
Gardner v. Braniff International, 312 F. Sup. 844 (D.Conn. 1970) (Timbers, C.J.), provides a closer analogy to the instant case. Braniff, a well-known airline of the time, had done some advertising in Connecticut. The plaintiff, a Connecticut resident traveling on one of Braniff s airplanes, fell on a metal stairway leading from the plane to the ground at Dulles International Airport. The court held that the plaintiff could not bring a negligence action in Connecticut. The action did not arise out of Braniff's solicitation. Braniff may have been a familiar name, and that familiarity may have been the reason that the plaintiff chose to fly on Braniff, but the familiarity was not one that would, in itself, entice a Connecticut resident to leave the state. The plaintiff had left the state for unrelated reasons. This factor distinguishes Gardner from Thomason, Frazer, O'Brien, and Mallon, and renders it analogous to the present case.
The fact that Dayton is licensed to do business in Connecticut adds nothing to this analysis. Delvecchio does not contend that Dayton actually conducted any business in Connecticut other than the solicitation that has already been discussed.
Under these circumstances, it was not reasonably foreseeable that, as the result of its solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiff. The long-arm statute, Conn. Gen. Stat. § 33-929(f)(2) does not authorize the assertion of jurisdiction over the defendant.
Because of the Court's statutory analysis, it is unnecessary to reach the significant due process question that would inevitably arise were the long-arm statute given the interpretation advocated by Delvecchio. See World-Wide Volkswagen Corp. v.Woodson, 444 U.S. 286 (1980).
The motion to dismiss is granted.
Jon C. Blue Judge of the Superior Court CT Page 2447