WINDSOR PROPERTIES, INC. *v.* THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.

SUPERIOR COURT                HOUSING SESSION

JUDICIAL DISTRICT OF       FILE NO. HSP-HD-7901-0228-W
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed June 15, 1979

*Platt & McCormack,* for the plaintiff.

*Cohn & Birnbaum,* for the defendant.

SPADA, J. This is a summary process action wherein the plaintiff landlord seeks possession of a retail supermarket store for nonpayment of rent. The defendant tenant has denied the allegations and has pleaded several special defenses.

The present case raises three issues of significance. They are (1) whether the notice to quit complied with the requirements of § 47a-23 of the General Statutes, (2) whether the observance of a

"curative" clause in the lease is a condition precedent to the commencement of summary process, and (3) whether the plaintiff's conduct subsequent to the service of process constituted a waiver of the lease forfeiture, if there was such a forfeiture.

The evidence was not in serious dispute and could reasonably have established the following. The plaintiff, owner of a shopping center in Windsor, entered into a written lease with the defendant, a national supermarket chain, on or about October 1, 1957. Options which were exercised extended the lease to November 30, 1978. The monthly rent was $1885, of which $85.33 represented parking lot maintenance.

In October, 1978, the defendant elected to terminate its retail operation at the leased site. It intended, however, to renew its five-year option for the period from December 1, 1978, to November 30, 1983. The defendant, in accordance with the provisions of the lease, duly exercised its renewal option. The defendant assigned or sublet the lease to a third party now operating a retail supermarket store on the subject premises.

The defendant's real estate division, which is located in Massachusetts and is responsible for the payment of the monthly rent, was alerted to the defendant's termination of business, but was unaware of the defendant's election to renew the lease. The defendant's real estate office incorrectly assumed a contract termination effective November 30, 1978, and therefore, in submitting what it thought was the "last payment" in November, it set off the sum of $638, which represented a tax credit due the defendant from the plaintiff. Understandably, the December rental was not proffered.

On December 20, 1978, the plaintiff served a notice to quit for nonpayment upon the defendant's

statutory agent for service of process in Connecticut, the United States Corporation Company. The notice to quit was delivered to the defendant's national office in New Jersey on December 27, 1978. On January 2, 1979, the defendant delivered to the plaintiff the unpaid November balance of $638, in addition to $3599.34 representing the monthly rental payment of $1799.67 for the months of December, 1978, and January, 1979. The rental payments have been retained by the plaintiff since January 3, 1979. The defendant was alerted in early February to the parking maintenance fees and delivered on February 12, 1979, the sum of $170.66, representing the December and January assessments. This sum has also been retained by the plaintiff to date.

## I

Section 33-400[1] of the General Statutes provides a procedure for a foreign corporation to appoint an agent for the purpose of receiving service of process. Section 52-57[2] of the General Statutes is

[1] "[General Statutes] Sec. 33-400. APPOINTMENT OF ATTORNEY FOR PROCESS. (a) Each foreign corporation, except insurance or surety or indemnity companies, shall, before transacting business in this state, appoint in writing an attorney upon whom all process, in any action or proceeding against it, may be served, and in such writing such corporation shall agree that any process against it which is served on said attorney shall be of the same legal force and validity as if served on the corporation and that such appointment shall continue in force as long as any liability remains outstanding against the corporation in this state.

"(b) A foreign corporation's attorney upon whom process may be served shall be (1) the secretary of the state and his successors in office, (2) a natural person who is a resident of this state, (3) a domestic corporation or (4) any corporation not organized under the laws of this state which has procured a certificate of authority to transact business or conduct affairs in this state. . . ."

[2] "[General Statutes] Sec. 52-57. MANNER OF SERVICE UPON INDIVIDUALS, MUNICIPALITIES AND CORPORATIONS. Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint,

the statutory authorization for service of process upon individuals, municipalities and corporations. Both of those statutes, read together, provide a procedure for serving a valid process on a foreign corporation. The plaintiff served process according to the standards of § 52-57 and § 33-400, supra. That method of service does not, however, meet the statutory requirements of § 47a-23, Connecticut's fundamental summary process statute. Section 47a-23 (Rev. to 1979) in relevant part states: "If the lessee or occupant . . . is a nonresident of this state at the time when it is desired to give him notice to quit possession . . . such notice to quit . . . may be served upon the person in charge thereof; or, if no person is in charge of such premises, such notice to quit may be served upon such lessee . . . by mailing to him a true and attested copy thereof, by registered or certified mail, directed to his last-known address, at least ten days before the time specified in such notice and such summons may be

---

with the defendant, or at his usual place of abode, in this state. Process in civil actions against the following-described classes of defendants shall be served as follows: In actions against a town, upon its clerk, assistant clerk, manager or one of its selectmen; against a city, upon its clerk or assistant clerk or upon its mayor or manager; against a borough, upon its manager, clerk or assistant clerk or upon the warden or one of its burgesses; against a school district, upon its clerk or one of its committee; against other municipal or quasi-municipal corporations, upon its clerk or upon its chief presiding officer or managing agent. In actions against private corporations, service shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. In actions against private corporations established under the laws of any other state, any foreign country or the United States, service may be made upon any of the aforesaid officers or agents, or upon the attorney of such corporation appointed pursuant to section 33-400."

served in like manner, except that such copy shall be mailed at least six days before the return date thereof."[3]

The statute does not authorize the service of a notice to quit on an agent of a nonresident corporation. Clearly, the method employed by the plaintiff abbreviates the time frame otherwise provided to a tenant under § 47a-23.

The summary process statute is precise and definite in the method of service it specifies for use in the case of nonresident defendants. The method of service elected by the plaintiff deviated from the statutory mandate. It is axiomatic that the summary process statute, being in derogation of the common law, must be "strictly followed and narrowly construed." *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598; *Vogel* v. *Bacus,* 133 Conn. 95; *Dreifuss* v. *World Art Group, Inc.,* 6 Conn. Cir. Ct. 309.

In *Seifert* v. *April,* 2 Conn. Sup. 134, the court held that the failure of the plaintiff to comply explicitly with the statute dealing with service of summons resulted in a failure to acquire jurisdiction over the defendant. The general rule is well established that "[w]here a specified mode of giving notice is prescribed by statute, that method is exclusive." 58 Am. Jur. 2d, Notice § 22. Failure to comply with the statutory standards in a summary process action deprives the court of jurisdiction to hear the action. *Hartford Trust Co.* v. *West Hartford,* 84 Conn. 646; *Ide* v. *Crown Supermarket of New Haven, Inc.,* 23 Conn. Sup. 253, 1 Conn. Cir. Ct. 190; *Jepsen* v. *The Toni Co.,* 20 Conn. Sup. 287.

The present notice to quit was served in violation of § 47a-23 of the General Statutes. Therefore, this court is without jurisdiction to decide this matter.

---

[3] See Public Acts 1979, No. 79-571 § 48 (a).

## II

Although not essential to the decision reached in this case, the court will address briefly the "curative" clause of the parties' lease. Paragraph 22 of the indenture required the lessor to notify the lessee, by registered mail, of any breached covenant so that "such default (could) be remedied as soon as may be reasonably possible." This type of clause is analogous to the "one bite of the apple" statute, § 47a-15 of the General Statutes. In *Kapa Associates* v. *Flores,* 35 Conn. Sup. 274, this court held that the notice suggested by § 47a-15, supra, to effectuate a reconciliation was mandatory and not directory. That notice was deemed a condition precedent to the commencement of eviction proceedings for material noncompliance by the tenant with the terms of the lease. If that issue had been pivotal to the present case, this court would have ruled that the failure by the lessor to implement the "curative" notice rendered defective its subsequent eviction proceedings.

## III

This court has had one occasion to rule upon the legal consequences of a landlord's retention of a tender of rent. In effect, the court ruled that the entire circumstances of the tender and retention must be evaluated to determine whether a waiver of forfeiture of a lease has resulted. In denying a defendant's motion to dismiss in *Alteri* v. *Layton,* 35 Conn. Sup. 258, this court stated (p. 260) that "to constitute acceptance, retention requires a demonstration of ownership such as an endorsement or an actual cashing of the . . . [tender]." The court in that case noted that the eviction complaint was served one day after receipt of the rental offer and held this to be "an unequivocal manifestation of the plaintiff's rejection of the defendant's offer." Id., p. 259.

In the case at bar, the summary process complaint was served eight days after receipt of the tender of rent. Additionally, there was no proof as to endorsement or negotiation. Under these circumstances, the court would not require a landlord to undertake the affirmative act of returning the tender and, without further evidence, would have found no waiver of a forfeiture.

The defendant, however, introduced two letters delivered to it and signed by the plaintiff's attorney, dated January 19, 1979, and February 15, 1979, in which several violations of the lease were noted. Inexplicably, the letter stated in part that "failure to remedy these violations by March 23, 1979, shall cause the lease signed by the parties *to terminate* on the above date." (Emphasis added.)

In view of the obvious inconsistency between those letters and the pending eviction proceedings, the court would be required to find a waiver of the lease forfeiture, if any such forfeiture occurred.

Accordingly, judgment may enter for the defendant.