[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISMISS
The defendant Van Boager has moved to dismiss this summary process action claiming that the Notice to Quit that was served on him was equivocal as well as being in violation of the statutory requirements § 47a-23(e). In addition the defendant moves to dismiss the second count of the complaint alleging that the violation of rules and regulations reason of the Notice to Quit deprives the court of subject matter jurisdiction since no Kapa notice was furnished as required by C.G.S§ 47a-15. The plaintiff objects to the dismissal and contends that the federal notice and the state notice both are in compliance with Connecticut General Statutes § 47a-23(e) and are not otherwise equivocal. The plaintiff does agree that the second count should be dismissed since the complaint fails to allege a Kapa notice as required by the statute.Kapa Associates v. Flores, 35 Conn. Sup. 274, 276 (1979).
FACTS
The plaintiff's mortgage on its residential development was subsidized by the Department of Housing and Urban Development (HUD). The lease, attached as an Exhibit to the complaint, further states that HUD may make monthly payments to the landlord on behalf of the various CT Page 1214-L tenants. Therefore the plaintiff must comply with the HUD regulations well as the statutory requirements for the notice to quit. JeffersonGarden Associates v. Greene, 202 Conn. 143, 145 (1987).
Pursuant to Connecticut General Statutes § 47a-23(a)(1)(D) the plaintiff served a notice to quit alleging non payment of rent and violations of rules and regulations. The notice to quit was served by a deputy sheriff of Fairfield County on October 24, 1994. The notice to quit complied with the requirements of the statute.
On October 24, 1994 the plaintiff issued a letter which was a termination notice. This letter was served on the defendant by the same deputy sheriff, on October 24, 1994 at the same time the statutory notice to quit was served. In addition a copy of the termination notice was sent by certified mail return receipt requested to the defendant on October 24, 1994. The postal green card contained a date of delivery on November 1, 1994 signed by the defendant. The court had on file the sheriff's return of the notice to quit along with the original notice to quit as well as an amended return by the deputy sheriff dated January 27, 1995 indicating that both the termination notice and notice to quit were served on October 24, 1994. The court also took evidence and CT Page 1214-M marked as exhibits, the receipt for certified mail as well as the original "domestic return receipt" from United States Postal Service as well as a duplicate copy of the October 24, 1994 termination notice.24 C.F.R. § 247.4 states the requirements for service of the termination notice.
 "Manner of Service. The notice provided for in paragraph (a) of this section shall be accomplished by; (1) Sending a letter by first class mail, properly stamped and addressed, to the tenant at his or her address at the project, with a proper return address, and (2) serving a copy of the notice on any adult person answering the door at the leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by affixing the notice to the door. Service shall not be deemed effective until both notices provided for in here have been accomplished. The date on which the notice shall be deemed to be received by the tenant shall be the date on which the first class letter provided for in this paragraph is mailed, or the date on which the notice provided for in this paragraph is properly given, whichever is later." CT Page 1214-N
Evidence furnished by the documents on file satisfies this court that the HUD notice requirements under 24 C.F.R. § 247.4 were complied with.
The defendant claims the notice to quit and the federal termination notice, in order to comply with Connecticut General Statutes § 47a-23(e), must be contained in one document. The defendant further claims that the use of two documents renders the statutory notice to quit equivocal therefore void. The defendant further argues that the double service of the termination notice renders the notice to quit equivocal. The defendant finally claims that the inclusion in the statutory notice to quit of the reservation of use and occupancy rights renders the notice to quit equivocal. The notice to quit contained the following language. "Any payment tendered after service of the Notice to Quit will be accepted for reimbursement of costs and attorneys fees and for use and occupancy only, with the reservation of right to continue the eviction action. Any moneys paid are not accepted as rents."
DISCUSSION OF THE LAW
A motion to dismiss shall be used to assert the lack of CT Page 1214-O jurisdiction over the subject matter. Southport Manor ConvalescentCenter, Inc. v. Foley, 216 Conn. 11, 12 (1990). Jurisdiction over the subject matter cannot be waived or conferred by consent. Serrani v.Board of Ethics, 215 Conn. 305, 308 (1993). When deciding a motion to dismiss, the courts "inquiry usually does not extend to the merits of the case." Southport Manor Convalescent Center, Inc. v. Foley, supra 16. The motion to dismiss "admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." Duguay v. Hopkins,191 Conn. 222, 227 (1983). Every presumption favoring jurisdiction shall be indulged. Conn. Light Power Co. v. Castle, 179 Conn. 415,421 (1980).
Summary process procedure is a creature of statute requiring that its language be narrowly construed and strictly followed. Jo-Mark Sand Gravel Co. v. Pantanella, 139 Conn. 598, 600-601 (1953). Statutes are to be construed to give effect to the apparent intention of the lawmaking body. Peck v. Jacquemin, 196 Conn. 53, 65 (1985). A defective Notice to Quit deprives the court of subject matter jurisdiction. Rosato v. Keller, 5 CLT. 325 p. 18; Windsor Properties,Inc. v. The Great Atlantic and Pacific Tea Company, Inc., 35 Conn. Sup. 297,301 (1979); Marrinan v. Hammer, 5 Conn. App. 101, 105 (1985). As CT Page 1214-P a condition precedent to a summary process action, a proper Notice to Quit is a jurisdictional necessity." Lampasona v. Jacobs, 209 Conn. 724,730 (1989).
The motion to dismiss "admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." Youngv. Chase, 18 Conn. App. 85, 90 (1989). "In evaluating the sufficiency of the plaintiff's complaint, we presume the validity of its allegations."Young v. Chase, supra 90. An evidentary hearing must be held on a Motion to Dismiss to consider facts outside the record. StandardTallow Corporation v. Jowdy, 190 Conn. 48, 56 (1983).
The court has considered the plaintiff's complaint dated November 16, 1994, the revised complaint dated January 12, 1995 the notice to quit, the sheriff's return on the notice to quit attached to the original complaint, the amended sheriff's return dated January 27, 1995 well as the postal receipts marked as Exhibits 1 and 2 on file.
CONNECTICUT GENERAL STATUTES § 47a-23(e) CAN BE SATISFIED BY EITHER ONEDOCUMENT OR BY TWO DOCUMENTS COMBINED
"Before a landlord may pursue its statutory remedy of summary CT Page 1214-Q process under Connecticut General Statutes § 47a-23, the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease." Jefferson GardenAssociates v. Greene, supra 143. Jefferson Gardens said that a landlord's compliance with both state and federal requirements for notices of termination must reflect the purpose that the notices were meant to serve. The Supreme Court further stated that not every deviation from the strict requirements of either statutes or regulations warrant dismissal of an action for summary process. The Supreme Court indicated that the landlord should not be precluded from pursuing summary eviction proceedings because of "hypertechnical dissection of the wording of the notices that he has sent." After Jefferson Garden was decided the legislature enacted P.A. 93-209 changing C.G.S. § 47-23 by authorizing a federal termination notice to be included in or combined with a notice required pursuant to the notice to quit statute.Connecticut General Statutes § 47a-23(e) states:
 "A termination notice required pursuant to federal law and regulations may be included in and or combined with the notice required pursuant to this section and such inclusion or combination does not thereby render the notice required CT Page 1214-R pursuant to this section equivocal, provided the rental agreement or lease shall not terminate until after the date specified in the notice for the lessee or occupant to quit possession or occupancy or the date of completion of the pretermination process, whichever is later."
The defendant cites a pre 1993 case for its authority that C.G.S.§ 47a-23(e) mandates that compliance with the federal law as well as the state notice to quit must be contained in one document. Fairway GardensInc. v. May NH-538, October 25, 1990 (Vertefeuille, J.). The legislature by using the phrase "included in or combined with" indicated that the termination notice may be one document ("included in") or two separate documents (1) federal termination notice and (2) the notice to quit ("combined with"). The defendant has cited no legislative history for its position. Each word or phrase in a legislative enactment must be given meaning. Carr v. Bridgewater,224 Conn. 44, 56-57 (1992). Words used in statutes should be construed according to their commonly approve usage. Commission on Human Rightsand Opportunities v. Windsor Hall Rest Home, 232 Conn. 181, 196 (1995). This court concludes that the requirements of § 47a-23(e) may be met by a separate notice to quit and a separate termination notice both served CT Page 1214-S at the same time.
THE USE OF A FEDERAL TERMINATION NOTICE BEING SERVED AT THE SAME TIMEWITH A STATUTORY NOTICE TO QUIT DOES NOT RENDER THE STATUTORY NOTICE TOQUIT EQUIVOCAL
The defendant claims that the termination notice required by24 C.F.R. § 247.4
gives the defendant an opportunity to cure the default. In this case arrangements for the payment of rent arrears with the plaintiff would cure one of the defaults. The parties did agree in oral argument that one of the salutary purpose of a HUD termination notice is to give the tenant an opportunity to cure the default. The HUD termination notice does not terminate a lease. Jefferson GardensAssociates v. Greene, supra 145.
The defendant argues that the tenants failure to pay rent does not automatically terminate the lease but provides the landlord with the right to terminate the lease by an unequivocal act. A notice to quit is such an unequivocal act and clearly demonstrates the landlord's intent to terminate the lease. Sandrew v. Pequot Drug, Inc., 4 Conn. App. 627,628 (1985); Housing Authority v. Hird, 13 Conn. App. 150, 155 (1988). CT Page 1214-T A notice to quit for non payment terminates the lease on its service and converts the tenancy to a tenancy at sufferance. Borst v. Ruff,137 Conn. 359, 361 (1950). Therefore a statutory notice to quit does not give the tenant the opportunity to cure. Housing Authority v. Hird,
supra 155.
The defendant's argument that the service of a federal termination notice, which gives the right to cure, along with a contemporaneously served statutory notice to quit, which does not give the tenant the right to cure, is equivocal. Bedford Street Housing v. Williams, H-982, August 31, 1992 (Holzberg, J).
The legislature addressed that issue in P.A. 93-209 by adding C.G.S. § 47a-23(e); "such inclusion or combination does not thereby render the notice required pursuant to this section equivocal." The defendant's second argument therefore fails.
THE SERVICE BY MAIL OF A SECOND COPY OF THE FEDERAL TERMINATION NOTICEDOES NOT RENDER THE NOTICE TO QUIT EQUIVOCAL
The defendant claims that the tenant received on October 24, 1994 CT Page 1214-U two equivocal notices; the first was the federal termination letter that gave him the opportunity to cure and the second was the statutory notice to quit that gave him no opportunity to cure. The court has already ruled that the legislature has permitted those two notices to be served at the same time or in combination therewith, either of which method does not render the statutory notice to quit equivocal. The defendant further argues that the mail receipt of the October 24, 1994 letter by the defendant on November 1, 1994 rendered the notice to quit equivocal. The defendant cites a number of cases in which statements or actions of the landlord after the service of the notice to quit rendered the notice to quit equivocal and thus void. Sandrew v. Pequot Drug, Inc., supra 628, Danpar Associates v. Falkha, 37 Conn. Sup. 820, 825 (1981). It was recently held that the mailing of a letter by a landlord after the service of a notice to quit which letter proposed a reinstatement of the lease upon certain conditions rendered the otherwise valid notice to quit equivocal. The Notice to Quit was negated. 617 Park Streetlimited v. Diakomanolis, H-1034, October 31, 1994 (DiPentima J.) ChurchStreet South Limited Partnership v. Harding, NH-610, December 2, 1993 (Mintz, J.).
This argument also fails. The service by mail of the second copy CT Page 1214-V of the termination notice was required to comply with HUD regulations. The legislature in passing Connecticut General Statutes § 47a-23(e) indicated that a notice to quit is not rendered equivocal by reason of the compliance with federal notice requirements. The mailing of the second termination notice was in compliance with the federal statutes. Such a notice does not render the original notice to quit equivocal. The defendant's motion to dismiss on this ground is not well taken.
INCLUSION OF USE AND OCCUPANCY RESERVATION LANGUAGE IN THE NOTICE TOQUIT COUPLED WITH THE FEDERAL TERMINATION NOTICE RENDERS THE NOTICE TOQUIT EQUIVOCAL
The plaintiff included in the notice to quit the reservation of use and occupancy language commonly found in most notices to quit issued in the State of Connecticut. The language was specifically approved by the Appellate Session of the Superior Court in 1982. Zitomer v. Palmer,38 Conn. Sup. 341, 343 (1982). The plaintiff's language is identical to the language used in Zitomer v. Palmer. The plaintiff added one sentence "Any monies paid are not accepted as rent". The court concludes that the second sentence does not change the underlying permissibility of that language being used in a notice to quit. CT Page 1214-W
The Appellate Session of the Superior Court in examining the reservation of use and occupancy language stated "Upon examination of the notice to quit, we conclude that it conveys a clear intention to terminate the lease and to proceed with judicial process to secure possession. The added statement clearly admonishes that any sums offered after receipt of the notice will be retained for purposes other than rent. The admonition serves two useful purposes. It avoids misleading tenants who tender late payments and it insulates the summary process action from being flawed by the acceptance of rent after commencement of the summary process." Zitomer v. Palmer, supra 343-344.Borst v. Ruff, supra 361-362.
Since 1982 it has been the custom of the practicing bar to include such reservation of use and occupancy language in the notice to quit. Customary practices of the bar have been held by the Supreme Court to be controlling as to whether or not the court is deprived of subject matter jurisdiction. Concept Associates, Ltd. v. Board of Tax Review,229 Conn. 618, 625 (1994). On the other hand the legislature has not taken upon itself to enact the Zitomer v. Palmer language in the notice to quit statute. The suggested language in Connecticut General Statutes CT Page 1214-X § 47a-23(b) does not include a clause reserving the payment of use and occupancy.
Therefore it is incumbent upon the court to make a determination as to whether that language, not approved by the Connecticut Legislature and not included in Connecticut General Statutes § 47a-23(e) which permits service of the federal termination notice and the statutory notice to quit on a simultaneous basis, renders the notice to quit equivocal.
The plaintiff chose to use that particular language at its own peril. The court finds that the notice to quit using the Zitomer v.Palmer language when a federal termination notice is required will render the notice to quit equivocal. Housing Authority v. Hird, supra 155. Fairway Gardens Inc. v. May, supra 4.
The purpose of the federal termination notice is to give the tenant an opportunity to cure the default and/or to avail himself of the federally mandated grievance procedures prior to the termination of a lease. A Federal termination notice gives the tenant the opportunity to cure. The statutory notice to quit does not give the tenant the CT Page 1214-Y opportunity to cure. The second termination notice received by the defendant on November 1, 1994 gives the tenant the opportunity to cure. A reading of the notice to quit use and occupancy reservation language under Zitomer v. Palmer indicates that any attempt by the tenant to cure the default is not going to actually cure it since the landlord can proceed with the summary process action. Under the federal setting, theZitomer v. Palmer language conflicts with purpose of termination notice.
The cure and non cure problem was addressed by the legislature in § 47a-23(e). The statute did not address the addition of the reservation of use and occupancy language. The use of the reservation of use and occupancy language appears to render equivocal, that which subsection (e) of C.G.S. § 47a-23(e) was declared not to be equivocal. The federal termination notice indicates payments of arrears will cure the default yet the Zitomer v. Palmer, language denies the right to cure.
These multiple mixed messages given in a federal termination notice setting by the use of Zitomer v. Palmer reservation of use and occupancy language renders the state required notice to quit equivocal. "In order to demonstrate its compliance with the notices required for a proper termination, a landlord must show that the notices given to the tenant CT Page 1214-Z apprised her of the information a tenant needs to protect herself against premature, discriminatory, arbitrary eviction." JeffersonGarden Associates v. Green, supra 143.
The plaintiff is not without its remedy. It may serve a notice to quit not containing the use and occupancy reservation language. That notice to quit and the federal termination notice properly served in accordance 24 C.F.R. § 247.4 and C.G.S. § 47a-23(e) would satisfy the unequivocal standards. The plaintiff may also utilize the federal termination notice then upon the expiration of the federally mandated time the plaintiff would then serve a notice to quit in accordance with C.G.S. § 47a-23. That notice to quit served after the expiration of the federal notice requirements may then include the reservation of use and occupancy language under Zitomer v. Palmer without rendering the state notice to quit equivocal.
The Notice to Quit dated October 24, 1994 is equivocal and therefore the Motion to Dismiss the entire action is granted.
The court notes that in the second count of the complaint alleging violation of rules and regulations, there is no allegation of a CT Page 1214-AA pretermination notice as required by Connecticut General Statutes § 47a-15. The plaintiff conceded that fact at oral argument. Kapa Associatesv. Flores, supra 276. Since the court has already dismissed the entire action consisting of two counts based on an equivocal notice to quit, the Kapa notice issue is moot.
The Motion to Dismiss granted.
BY THE COURT,
KEVIN TIERNEY, JUDGE