[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS TO DISMISS #102 AND #103
The pro se plaintiff, Joseph Loughery, filed this complaint against the defendants, commissioner of correction, John Armstrong, Ron Angelone, Stan Young, Correctional Medical Services, Inc. (CMS), Nurse Baker and Officer Slussy, on November 15, 2001. The plaintiffs negligence claim arises out of the following alleged facts. CMS is a Missouri corporation with its principal place of business in St. Louis, Missouri. CMS employs medical personnel who provide medical services to Wallens Ridge State Prison in Virginia. As an inmate of the Connecticut department of correction, the plaintiff was transferred to Wallens Ridge State Prison in Virginia, pursuant to an agreement between the states of Connecticut and Virginia, in October, 2000. In accordance with the correctional facility's procedures, the plaintiff had his blood withdrawn on October 16, 2000. The plaintiffs blood was withdrawn by Nurse Baker, an employee of CMS. Nurse Baker instructed the plaintiff, while in his cell, to put his arm through the small opening or slot used for the prisoner's food tray. The plaintiff complied with Nurse Baker's instructions and put his arm through the slot. While Nurse Baker was withdrawing his blood, the plaintiff was not provided with any seat but rather, remained standing. Immediately after Nurse Baker began taking the plaintiffs blood, the plaintiff became pale and felt light-headed, faint, dizzy, weak, shaky and broke out into a sweat. The plaintiff told Nurse Baker several times that he was experiencing these symptoms and again asked her several times to remove the needle from his arm. Nurse Baker refused to remove the needle. As a result, the plaintiff fainted and fell to the floor. Nurse Baker grabbed the plaintiffs wrist as he fell and slapped him while yelling for him to regain consciousness. When the plaintiff regained consciousness, the needle was still in his arm and blood was on the floor, door, and wall of the cell as well as all over the plaintiffs clothes. The plaintiff repeatedly asked for help, however, no help or medical assistance was given to him. Instead, Nurse Baker gave the plaintiff a piece of gauze and instructed him to clean up the blood that was on his person. Nurse Baker instructed the plaintiffs cell mate to clean up the blood but did not provide the cell mate with any instructions on how to do so safely; no cleaning products were given to the cell mate. CT Page 8786
After withdrawing the plaintiffs blood, Nurse Baker attempted to withdraw the cell mate's blood. Since the plaintiff could not walk away from the area of the tray slot because he was still weak, Nurse Baker instructed the plaintiff to crawl out of the way so that she could withdraw the cell mate's blood. The plaintiff was able to move about one foot from the area where he had fainted, and laid there in a semi-conscious state. He repeated his requests for medical attention and help. In response to the plaintiffs requests, Nurse Baker told the other inmates that the plaintiff "was a crying baby." (Complaint, ¶ 34.) As a result of the foregoing events, the plaintiff alleges that he has received threats from other inmates who perceive him as weak. He also alleges that he received inadequate and hazardous medical care from Wallens Ridge State Prison and CMS.
In response to these allegations, both CMS and Nurse Baker filed identical motions to dismiss on February 1, 2002, on the grounds of lack of personal jurisdiction, insufficiency of process and lack of recognizance. CMS and Nurse Baker filed memoranda of law supporting their motions to dismiss. In addition to the memoranda, CMS submitted two exhibits, the return of service (Exhibit A) and the certified affidavit of Tracy Bartoli, Assistant Secretary of CMS (Exhibit B). Nurse Baker also submitted the return of service (Exhibit A) and her own certified affidavit (Exhibit B). The plaintiff has not submitted a memorandum of law in opposition to the motion to dismiss.
Pursuant to Practice Book § 10-30, "[a]ny defendant, wishing to contest the court's jurisdiction . . . must do so by filing a motion to dismiss. . . ." "[A] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624,461 A.2d 991 (1983). It admits all facts well pleaded; Barde v. Board ofTrustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988); and looks at the facts in the light most favorable to the plaintiff. Lawrence Brunoli, Inc. v.Branford, 247 Conn. 407, 410-11, 722 A.2d 271 (1999). "[I]n the establishment of facts pertaining to personal jurisdiction, it is the plaintiff who bears the burden of proof." Lombard Bros., Inc. v. GeneralAsset Management Co., 190 Conn. 245, 250, 460 A.2d 481 (1983).
 A Motion to Dismiss #103
CT Page 8787
In her motion to dismiss, Nurse Baker argues that the court lacks personal jurisdiction over her because she is not a resident of Connecticut, has not transacted any business in Connecticut and has not worked in Connecticut. "When a defendant files a motion to dismiss challenging the court's jurisdiction, a two-part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Olson v. Accessory Controls and Equipment Corp.,54 Conn. App. 506, 514, 735 AZ2d 881, aff'd on other grounds,254 Conn. 145, 757 A.2d 14 (1999). General Statutes § 52-59b governs jurisdiction over a nonresident individual. General Statutes § 52-59b
(a) states that the court has jurisdiction over a nonresident individual who "(1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (3) of subsection (a) of said section, located within the state."
The plaintiff has failed to allege that Nurse Baker has had any contact with Connecticut that would apprise her of jurisdiction in this state. In her affidavit, Nurse Baker avers that she has been a resident of Virginia since October 2000. (Affidavit of Adele Baker, January 25, 2002 [Baker Affidavit], ¶ 12.) She further avers that she has never worked in Connecticut, owned property in Connecticut or transacted business in Connecticut. (Baker Affidavit, ¶¶ 5-7.) As such, the requirements contained in the long-arm statute for nonresident individuals in §52-59b are not satisfied. It is therefore concluded that this court lacks jurisdiction over Nurse Baker.
The second prong of the personal jurisdiction test requires the court to determine if the constitutional due process principles would allow it to exercise jurisdiction over Nurse Baker. Since the long-arm statute requirements are not satisfied, it is not necessary for the court to evaluate whether the constitutional due process principles would be CT Page 8788 offended if the court were to exercise jurisdiction over Nurse Baker. Accordingly, Nurse Baker's motion to dismiss is granted.
 B Motion to Dismiss #102 1 Respondeat Superior
The plaintiff alleges that he sustained injuries as a result of Nurse Baker's negligence. Nurse Baker is employed by CMS. CMS, therefore, can be held liable for Nurse Baker's negligence through the doctrine of respondeat superior. "Under the doctrine of respondeat superior, a master is liable for the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business."Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 500, 656 A.2d 1009
(1995). "A servant acts within the scope of employment while engaged in the service of the master." (Internal quotation marks omitted.) Mullenv. Horton, 46 Conn. App. 764, 700 A.2d 1377 (1997). "When the servant is doing or attempting to do the very thing which he was directed to do, the master is liable, though the servant's method of doing it be wholly unauthorized or forbidden." (Internal quotation marks omitted.) Id.
The plaintiff alleges that he suffered injuries arising from Nurse Baker's attempt to withdraw his blood. Nurse Baker was allegedly providing medical services to the plaintiff in accordance with her employment with CMS when the plaintiff was injured. Therefore, as her employer, CMS may be held vicariously liable for Nurse Baker's alleged negligence. Accordingly, the court must decide whether it may exercise personal jurisdiction over CMS.
 2 Statutory Authority
In determining if the court has jurisdiction over CMS, a foreign corporation, the court must look at General Statutes § 33-929. Connecticut's long-arm statute governing jurisdiction over foreign corporations provides: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any CT Page 8789 contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." General Statutes § 33-929 (f).
The plaintiff alleges that he was transferred from Connecticut's correctional facility to Virginia's correctional facility at Wallens Ridge State Prison pursuant to a contract between the states of Connecticut and Virginia. It is undisputed that there was a contract created by the states of Connecticut and Virginia. At oral argument, the parties agreed that this contract was created and negotiated in Connecticut. CMS, however, is not a party to this contract. The issue, therefore, is whether the court has jurisdiction over CMS even though it is not a party to the contract.
This court finds that Nurse Baker's alleged actions of negligence arise out of the contract between the Virginia department of correction and Connecticut because CMS has an apparent authority relationship with the Virginia department of correction whereby CMS is an agent for the Virginia department of correction. Agency is defined as "the fiduciary relationship resulting from the manifestation of consent by one person to another that the other shall act on his or her behalf and subject to his or her control and consent by the other to so act. . . . Restatement (Second), 1 Agency 1." (Internal quotation marks omitted.) Beckensteinv. Potter and Carrier, Inc., 191 Conn. 120, 132, 464 A.2d 6 (1983). "[T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Id., 133.
"Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." Id., 140. The Restatement (Second) provides that "apparent authority results from a manifestation by a person that another is his agent, the manifestation being made to a third person and not, as when authority is created, to the agent." 1 Restatement (Second), Agency, § 8, comment (a) (1958). Apparent authority "is CT Page 8790 created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." 1 Restatement (Second), supra, § 27. "[E]ither the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such a belief." 1 Restatement (Second), supra, § 27, comment (a). To apply the doctrine of apparent authority, the plaintiff or third person must show that a person in his situation "would have the right to assume" that a certain party "was an agent of the [principal]." Francisco v. HartfordGynecological Center, Inc., Superior Court, judicial district of Hartford, Docket No. CV 92 0513841 (March 1, 1994, Corradino, J.). Furthermore, the plaintiff must show that he believed the party to be an agent of the principal because "(1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." (Internal quotation marks omitted.) Hallasv. Boehmke Dobosz, Inc., 239 Conn. 658, 674, 686 A.2d 491 (1997). If the plaintiff demonstrates that apparent authority exists, "the third person has the same rights with reference to the principal as where the agent is authorized." 1 Restatement (Second), supra, § 8, comment (a).
Courts have applied the doctrine of apparent authority to situations involving physicians and nurses. A plaintiff can recover under the theory of apparent authority if, during her treatment in a hospital by physicians who are not employees of the hospital, the "hospital holds out to the public or its patients that physicians associated with it are its employees." LeConche v. Elligers, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 88 348312 (July 16, 1991, Stengel, J.); see Francisco v. Hartford Gynecological Center,Inc., supra, Superior Court, Docket No. CV 92 0513841. "A holding out occurs when the hospital acts or omits to act in some way which leads the patient to a reasonable belief he is being treated by the hospital of one of its employees." (Internal quotation marks omitted.) LeConche v.Elligers, supra, Superior Court, Docket No. CV 88 348312. The theory behind applying the apparent authority doctrine to medical situations is that the public "is a vulnerable public relying on experts for treatment. The cases seem to apply the doctrine simply because of the fact that the hospital provides treatment and fails to specifically notify the patient that he or she was not being treated by an agent of the hospital." Francisco v. Hartford Gynecological Center, Inc., supra, Superior Court, Docket No. CV 920513841. CT Page 8791
The doctrine of apparent authority can be extended to encompass the present situation. Like the patient who enters a hospital for treatment, the plaintiff was in a vulnerable position when he received treatment from Nurse Baker, a person trained in medical care, and CMS at Wallens Ridge State Prison. The plaintiff relied on Nurse Baker, an employee of CMS, to provide him with adequate medical care, just as he would if he were in a hospital. Although the Wallens Ridge State Prison is clearly not a hospital, it does contain a prison hospital or an infirmary. There is a medical staff at the prison, and there is no evidence that the inmates are notified by prison officials or by the Virginia department of correction that the members of the medical staff are not employed by the Virginia department of correction. In light of this omission on the part of the Virginia department of correction, an inmate in the plaintiffs position could reasonably believe that Nurse Baker and CMS were employees of the Virginia department of correction.
The plaintiff's present cause of action is factually similar to the one in Francisco v. Hartford Gynecological Center, Inc., supra, Superior Court, Docket No. CV 92 0513841. In Francisco, the plaintiff brought a medical malpractice claim against Hartford Gynecological Center alleging that she was injured by a nurse during the administration of anesthesia which she received intravenously. The court denied the defendant's motion for summary judgment, holding that since the defendant did not notify the plaintiff that "the nurse was anything other than an employee of the center" or that the plaintiff "was not aware of any agreement between the center and the nurse which resulted in the latter being an independent contractor," there was a question of fact as to the applicability of the apparent authority doctrine. Id. Similarly, the plaintiff alleges that he was injured when Nurse Baker withdrew his blood intravenously. Like the plaintiff in Francisco, there is no evidence that the plaintiff in the present case was ever notified that Nurse Baker or CMS were not employed by the Virginia department of correction. Moreover, the fact that the plaintiff served the complaint on CMS and Nurse Baker in Virginia illustrates that the plaintiff believed that CMS was an agent of the Virginia department of correction.
This court clearly has jurisdiction over the Virginia department of correction, as it was a party to the contract formed and negotiated in Connecticut. Likewise, this court has jurisdiction over CMS through its agency relationship with the Virginia department of correction. While the court knows of no authority in Connecticut where a court has had jurisdiction over an agent because of its principal's acts, other jurisdictions have discussed the situation in terms of a parent-subsidiary relationship. Usually, the question of jurisdiction in an agency relationship "arises in the reverse situation; an attempt to CT Page 8792 attribute the acts of a subsidiary to the parent for purposes of acquiring jurisdiction." Zwick v. Revco Drug Store, 580 F. Sup. 64, 66
(W.D. Pa. 1984). "Courts and commentators have recognized that an agency relationship may justify finding a parent corporation `does business' in a jurisdiction through its subsidiary's local activities." ProductPromotions, Inc. v. Cousteau, 495 F.2d 483, 492 (5th Cir. 1974). Generally, the courts reject the argument that there is jurisdiction over the subsidiary because there is jurisdiction over the parent where "[n]othing in the record indicates that the formal separation between parent and subsidiary is not scrupulously maintained." Uston v. GrandResorts, Inc., 564 F.2d 1217, 1218 (9th Cir. 1977); see also Zwick v.Revco Drug Store, supra, 66. Moreover, the United States District Court has stated that "no case [in New York] has been found even suggesting that the parent-subsidiary relationship standing alone is a sufficient basis for exercising personal jurisdiction over the nonresident foreign subsidiary." Rivera v. New Jersey Bell Telephone Co., 340 F. Sup. 660,662 (E.D.N.Y. 1972).
The cases suggest that the courts would find that they do in fact have jurisdiction over the subsidiary if there was something else in the record tending to prove that there was jurisdiction other than the fact that they have jurisdiction over the parent. Similarly, in analogizing the parent-subsidiary relationship to the principal-agent relationship, the court can find that it has jurisdiction over the agent because it not only has jurisdiction over the principal but also because the agent has done some act apprising it of jurisdiction of the court. For example, in the present case, CMS is the agent of the Virginia department of correction. It is not disputed that this court has jurisdiction over the Virginia department of correction because it was a party to the contract negotiated and made in Connecticut. See General Statutes § 33-929 (f) (1). This court, therefore, has personal jurisdiction over CMS' principal. The court has personal jurisdiction over CMS because it is the agent of the Virginia department of correction and this cause of action arises out of the contract formed in Connecticut.
Pursuant to General Statutes § 33-929 (f), "[e]very foreign corporation shall be subject to suit in this state . . . on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state." The Supreme Court has interpreted the phrase `arising out of' in § 33-929 (f) in the context of solicitating business in Thomason v. Chemical Bank, 234 Conn. 281, 661 A.2d 595
(1995). The court found that the phrase "arising out of" does not "require a causal connection between the defendant's [activities] and the [plaintiff]'s lawsuit." Id., 296. "[A] plaintiffs cause of action aris[es] . . . out of . . . business solicited in this state if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably CT Page 8793 foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." (Internal quotation marks omitted.) Id. The court further stated that "[a] plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that the plaintiffs cause of action is not materially different from an action that might have resulted directly from that solicitation." (Emphasis in original.) Id.
In Goldstein v. Nutrition Now, Inc., Superior Court, judicial district of Waterbury, Docket No. CV 96 0150429S (August 23, 1995, Sheldon, J.), the court extended the reasonably foreseeable test and the holding ofThomason v. Chemical Bank, supra, 234 Conn. 296, to include causes of action arising out the defendant's "production, manufacture or distribution of goods." General Statutes § 33-929 (f)(3). The court adapted the Thomason court's holding and stated that a plaintiffs "cause of action aris[es] . . . out of [the defendant's] production, manufacture or distribution of goods . . . with the reasonable expectation that such goods are to be used or consumed in this state, if at the time the defendant engaged in such [production, manufacture or distribution of goods] . . ., it was reasonably foreseeable that, as a result of [such production, manufacture or distribution] . . ., the defendant could be sued in Connecticut . . . on a cause of action similar to that now being brought by the plaintiffs." (Internal quotation marks omitted.) Goldsteinv. Nutrition Now, Inc., supra, Superior Court, Docket No. CV 960150429S.
Similarly, this court will extend the reasonably foreseeable test inThomason v. Chemical Bank, supra, 234 Conn. 296, to § 33-929 (f) (1). In applying the reasonably foreseeable test from Thomason v.Chemical Bank, supra, 296, to § 33-929 (f)(1), a cause of action arises out of a contract formed in Connecticut if it is reasonably foreseeable that a defendant could be haled into court on a cause of action based on a cause of action similar to the one now being brought against it. Therefore, a court has jurisdiction over a defendant if the defendant could reasonably foresee being sued on a contract that is similar to the contract the plaintiff alleges exists.
In the present case, the cause of action arises out of a contract formed in Connecticut. CMS could reasonably foresee being haled into court on this contract or a contract similar to this one that was entered into by the Virginia department of correction. CMS employs people to work at the Virginia department of correction. Its employees provide medical services to inmates at Virginia prisons, specifically at Wallens Ridge State Prison. It is reasonably foreseeable that CMS would be haled into court in Connecticut because its employees provide medical services to CT Page 8794 Connecticut inmates who are transferred to Virginia prisons. In essence, CMS provides services to Connecticut inmates because of the contract between its principal, the Virginia department of correction, and Connecticut. Absent the contract, CMS would not interact with Connecticut inmates. Thus, as both an agent of the Virginia department of correction and as a provider of medical services to Connecticut inmates who are transferred to Virginia pursuant to a contract, this cause of action arises out a contract made in Connecticut. As such, the requirements in § 33-929 (f) of Connecticut's long-arm statute are satisfied.
 3 Constitutional Principles
Under the second part of the test for assertion of personal jurisdiction, the court must determine whether the exercise of jurisdiction its jurisdiction "comports with the principles of due process. Frazer v. McGowan, [198 Conn. 243, 252, 502 A.2d 905 (1986)]." (Internal quotation marks omitted.) Thomason v. Chemical Bank, supra,234 Conn. 299. "The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.'" Frazer v. McGowan, 198 Conn. 243, 252, 502 A.2d 905
(1986). To determine if the defendant has minimum contacts with the forum state, the court must apply due process analysis. The due process analysis requires the court to decide whether the defendant "has been carrying on in [Connecticut] a continuous and systematic, but limited, part of its general business" and determine if "the exercise of general jurisdiction over the [defendant] is therefore both `reasonable and just'." Thomason v. Chemical Bank, supra, 300. If the due process test is met, the court can properly assert in personam jurisdiction over the defendant.
"The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co. v. Bohart,197 Conn. 34, 42, 495 A.2d 1034 (1985). However, "jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum state." Id., 476. The court can exercise specific or general jurisdiction to find that the defendant has had minimum contacts with the forum state. Thomason v. Chemical Bank, supra, 234 Conn. 288. "A state court will have "specific" jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities." CT Page 8795 (Citations omitted; emphasis in original; internal quotation marks omitted.) Id. A court can exercise general jurisdiction over a defendant where that defendant "has had sufficiently continuous and systematic overall business contacts with the state." Id., 287.
CMS' principal, the Virginia department of correction, purposely availed itself to jurisdiction in Connecticut by negotiating and forming the contract in Connecticut. Through the contract, the Virginia department of correction directed its activities at residents of Connecticut, mainly Connecticut inmates. As an agent of the Virginia department of correction, CMS also availed itself to jurisdiction in Connecticut. It provided medical services to Connecticut inmates. The plaintiffs injuries arise out of and are a direct result of CMS' activities which are directed at residents of Connecticut who are serving time in Virginia prisons. Through both its principal's activities and its own activities, CMS has minimum contacts with Connecticut.
It is therefore concluded that both parts of the personal jurisdiction test are satisfied. This court can exercise jurisdiction over CMS because both the long-arm statute and the constitutional provisions are satisfied.
 4 Service of Process
CMS argues that the complaint was not served in accordance with the service of process requirements in § 33-929. The plaintiff states in his complaint that service of process can be made upon CMS at CMS' attorney's office, Wright, Robinson, Osthimer and Tatum, located at 411 East Franklin Street, Suite 400, Richmond, Virginia. The return shows that the writ, summons and complaint were sent to CMS via certified mail, and were sent to CMS at 272 Dogwood Lane, Bigstone, Virginia, which is the address for Wallens Ridge State Prison. CMS argues that this address is not its principal place of business; thus, service of process was insufficient under § 33-929 (g).[1]
Since the court has personal jurisdiction over CMS under § 33-929
(f), § 33-929 (g) governs service of process. In addition to §33-929 (g), § 52-57 authorizes service of process over corporations. When read together, § 33-929 and § 52-57 "provide a procedure for serving a valid process on a foreign corporation." Windsor Properties,Inc. v. Great Atlantic and Pacific Tea Co., Inc., 35 Conn. Sup. 297,300, 408 A.2d 936 (1979) (discussing §§ 52-57 and 33-400, the predecessor to § 33-929). General Statutes § 52-57 (c) provides in relevant part: "In actions against a private corporation, service of CT Page 8796 process shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer . . . or its general or managing agent or manager . . . or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. In actions against a private corporation established under the laws of any other state . . . service of process may be made upon any of the aforesaid officers or agents, or upon the agent of the corporation appointed pursuant to section 33-922."
The plaintiff sent CMS' service of process to Wallens Ridge State Prison because he believed that CMS was an agent of the prison and the Virginia department of correction. As stated above, the court finds that CMS and the Virginia department of correction were in an apparent agency relationship. The United States District Court has ruled that serving an agent who has apparent authority to act on behalf of the principal was sufficient for service of process on the principal. Fonar Corp. v. TariqContracting, Inc., 885 F. Sup. 56 (E.D.N.Y. 1995). The court upheld the service of process even though the person who was served "was not specifically designated or indicated" by the defendant principal to accept service of process on its behalf because the defendant principal corporation had notice of the action. Id., 60. The court found that the individual agent served had apparent authority to conduct business for the defendant principal and that service of process was effective against the defendant principal. Id., 61.
As opposed to the situation in Fonar Corp. v. Tariq Contracting, Inc., supra, 885 F. Sup. 56, where the agent was served instead of the defendant principal, in the present case, the agent, CMS, was served at the principal's place of business. While CMS' principal place of business is technically not Wallens Ridge State Prison, under the agency theory, the plaintiff believed that its principal place of business was at Wallens Ridge State Prison. As discussed above, there is no evidence that the principal, the Virginia department of correction, did anything to dispel the plaintiffs belief that CMS was its agent. As such, pursuant to § 33-929 (g) and § 52-57 (c), which provide for service at a corporation's principal place of business or office, CMS was properly served. Moreover, since "[t]he basic purpose of service of process is to confer jurisdiction and to give notice of the pending action," service of process was sufficient. Gluck v. Gluck, 181 Conn. 225, 226, 435 A.2d 35
(1980). There is no dispute that CMS received notice of this cause of action despite it being served at the principal's place of business. Therefore, in light of the agency relationship, the service of process on CMS was sufficient. CT Page 8797
 5 Recognizance
Finally, CMS argues that this court lacks personal jurisdiction over it because the plaintiff failed to satisfy the recognizance requirement provided for in General Statutes § 52-185 and Practice Book §8-4. Pursuant to § 52-185 (a), "if it does not appear to the authority signing the process that the plaintiff is able to pay the costs of the action should judgment be rendered against him, the plaintiff shall, before the process is signed, enter into a recognizance to the adverse party with a financially responsible inhabitant of this state as surety, or a financially responsible inhabitant of this state shall enter into a recognizance to the adverse party, that the plaintiff shall prosecute his action to effect and answer all costs for which judgment is rendered against him." Practice Book § 8-4 states that, in cases where judgment may be rendered against the plaintiff, service of process cannot be issued unless there has been a recognizance from a third party or the authority signing the writ certifies that "he or she has personal knowledge as to the financial responsibility of the plaintiff and deems it sufficient." Practice Book § 8-4.
When a plaintiff fails to comply with Practice Book § 8-4, "the validity of the writ and service shall not be affected unless the neglect is made a ground of a motion to dismiss." Practice Book § 8-5(a); see also General Statutes § 52-185 (d). Subsection (b) of § 8-5
provides, however, that upon hearing the motion to dismiss, the court is permitted to direct "the plaintiff to file a bond to prosecute in an amount deemed sufficient by the [court]." Practice Book § 8-5(b); see also General Statutes § 52-185 (d). The court will dismiss the action unless the plaintiff complies with the order within two weeks from the date the order is entered. Practice Book § 8-5(b).
Courts have determined that plaintiffs who are indigent or who are inmates are not exempt from filing the required bond to begin a cause of action. Steinkamp v. Jacque, 36 Conn. Sup. 37, 410 A.2d 489 (1979) (no waiver of bond for prosecution for indigent defendant); Fellows v.Williams, Superior Court, judicial district of Hartford, Docket No. CV 00 0800686S (September 27, 2000, Rittenband, J.) (no waiver of bond for prosecution for inmate). While the plaintiff is not exempt from filing a bond or a recognizance, the court does not have to dismiss his action. Instead, pursuant to Practice Book § 8-5(b), the court will hold a hearing to determine the sufficient amount for the bond to be filed by the plaintiff. The plaintiff will have two weeks after the court enters its order for the amount for the bond to file the bond. The court shall delay entering its judgment on the motion to dismiss for lack of CT Page 8798 recognizance until this two-week period has ended.
 CONCLUSION
For the reasons stated, the court lacks personal jurisdiction over Nurse Baker. Accordingly, the court grants Nurse Baker's motion to dismiss. For the reasons stated, the court can exercise personal jurisdiction over CMS and the service of process was sufficient. However, the court reserves judgment on the motion to dismiss filed by CMS for lack of recognizance until after it holds a hearing to determine the amount for the bond the plaintiff is required to file.
 ___________________, J. Hennessey